UNITED STATES of America,
Plaintiff,

v.

JOS. SCHLITZ BREWING COMPANY
and General Brewing Company,
Defendants.

Civ. A. No. 42127.

United States District Court
N. D. California, S. D.

March 24, 1966.

Lyle L. Jones, Anthony Desmond, James Figenshaw, Gilbert Pavlovsky, Antitrust Division, Dept. of Justice, San Francisco, Cal., John T. Cusack, Chicago, Ill., for plaintiff United States.

Richard J. Archer, Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., Joseph DuCoeur, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chi-

cago, Ill., for defendant Jos. Schlitz Brewing Co.

Loyd W. McCormick, McCutchen, Doyle, Brown, Trautman & Enersen, San Francisco, Cal., for defendant General Brewing Co.

William J. Manning, Simpson, Thacher & Bartlett, New York City, for John Labatt Limited.

WEIGEL, District Judge.

The defendant Jos. Schlitz Brewing Company is a Wisconsin corporation engaged in the production and sale of beer. The defendant General Brewing Company is a California corporation so engaged. John Labatt Limited, a large Canadian brewer, controls General Brewing Company through Labatt's ownership of a majority of General's stock.

The gravamen of the charge by the United States of America, plaintiff, is that "The effect of the purchase and acquisition of the assets of Burgermeister Brewing Corporation by defendant Schlitz and of the stock acquisition by defendant Schlitz in John Labatt, Ltd., and of each of them, may be substantially to lessen competition, or tend to create a monopoly in the production and sale of beer in the United States, the West, and the State of California in violation of Section 7 of the Clayton Act * * *" (Complaint, Page 6, lines 23–28).

The evidence adduced at the trial and the applicable law sustain the plaintiff's charge sufficiently to call for granting relief consonant with the plaintiff's prayer. The office of this memorandum is to serve as Findings of Fact and Conclusions of Law underlying the decree to be entered. The intent is to meet the bench marks indicated, for federal trial courts in cases of this kind, by the Supreme Court in United States v. El Paso Natural Gas Co., 376 U.S. 651, 656–657, 662–663, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964).

Extended hearings, briefing and consideration of the trial court with all counsel were focused upon preparation of a definitive Pre-Trial Order approved by all parties. Its scope and content are indicated by the marginal notation of the subject matters listed in its table of contents.[1] That order is referenced here because, for one thing, its delineations of the issues are inserted or grouped as headings in the Findings of Fact below.

The trial court directed the parties to include, in the post-trial briefs of each, their respective proposed Findings and Conclusions. Each set has been reviewed by the trial court. While those proposed by the United States and by General Brewing have provided the basic pattern for the trial court's own Findings and Conclusions, the latter are the product of careful sifting. They incorporate many substantial additions, deletions and revisions as well as numerous other changes including citations to the record. It is believed that the Findings, Conclusions and comment show the reasoning which led this court to its decision on all relevant issues.

[1]. "I. Stipulation as to Jurisdiction and Venue, Page 1; II. Factual Statement of the Parties' Versions of the Events, Page 2; III. Factual Statement of the Parties' Versions of Special Defenses, Page 4; IV. Statement Concerning the Specific Relief Sought, Page 4; V. Statement of Admitted or Undisputed Facts, Page 6; VI. Issues to be Tried, Page 128; VII. Brief Separate Statement of Points of Law, Page 132; VIII. Order With Respect to Witnesses and Exhibits, Page 132; IX. Exhibits Intended to be Offered at the Trial Except Those to be Used for Impeachment Only, Page 135; X. Lists of Witnesses, Page 147; XI. Statement as to Separate Trial of Any Issues of Fact, Page 154; XII. Statement as to Consolidation, Page 154; XIII. Submission Upon an Agreed Statement of Facts, Page 154; XIV. Appointment of an Expert, Page 155; XV. Motion to Dismiss, Page 155; XVI. Pendente Lite Relief, Page 155; XVII. Request for Any Further Discovery, Page 155; XVIII. Amendments to Pleadings, Page 155; XIX. Final Stipulations of Fact, Page 156; XX. Settlement, Page 156; XXI. Informal Pretrial Conferences, Page 156; XXII. Unusual Problems Concerning Trial, Attendance of Parties or Essential Witnesses, or Other Practical Problems, Page 156; XXIII. Further Proceedings and Trial Briefs, Page 157". (Pre-Trial Order, i. (8/5/65)).

A final preliminary matter merits discussion. Some weeks after all parties had rested their cases, defendant Schlitz made a "Motion to Reopen the Record for the taking of Additional Evidence and for Other Relief". The motion was heard upon affidavits, memoranda and argument of counsel. It was predicated upon the post-trial agreement of General Brewing to sell to Miller Brewing Company of Milwaukee, Wisconsin, one of General's breweries, that located in Azusa, California. This brewery represents 34% of General's total potential productive capacity. The motion was opposed by the United States and, of course, by General. It was denied by the trial court in what that court considered a sound exercise of discretion. The moving papers and those filed in opposition made it clear beyond cavil, that (1) the agreement to sell was an exercise of General Brewing's independent business judgment, (2) consummation of the sale would leave General Brewing with more than adequate brewing capacity for all foreseeable increases in sales in all markets which it now taps, (3) General Brewing's receipt of $8,000,000 for the sale would materially strengthen its capacity to compete with all its competitors, including, notably, Schlitz, (4) the sale would improve General Brewing's ability to expand into other areas and (5) it would strengthen General Brewing as a vehicle for Labatt's competition in the U. S. market. The court did order General Brewing promptly to report to the court all express or tacit commitments for any subsequent disposition of any major assets, thus assuring the court of ample opportunity to protect Schlitz in the matter, for example, of its professed concern that General Brewing was engaging in a process of liquidation, despite documented and convincing contrary assurance to the court on General Brewing's part.

## FINDINGS OF FACT

### Jurisdiction

1. Defendant Jos. Schlitz Brewing Company (hereinafter referred to as "Schlitz") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal office located in Milwaukee, Wisconsin. (Pre-Trial Order, p. 1).

2. Defendant General Brewing Corporation (formerly known as Lucky Lager Brewing Company and hereinafter referred to as "General Brewing") is a corporation organized and existing under the laws of the State of California, with its principal office located in San Francisco, California. (Pre-Trial Order, p. 1).

3. John Labatt Limited (hereinafter referred to as "Labatt") is a Dominion corporation organized and existing under the laws of the Dominion of Canada, with its principal office in London, Ontario, Canada. (Pre-Trial Order, p. 2).

4. Prior to December 31, 1961, Burgermeister Brewing Corporation (hereinafter referred to as "Burgermeister") was a corporation organized and existing under the laws of the State of California, with its principal office in San Francisco, California. (Pre-Trial Order, p. 2).

5. Defendants Schlitz and General Brewing are engaged in commerce within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18. Prior to December 31, 1961, when its assets were purchased by Schlitz, Burgermeister was engaged in commerce within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18. (Pre-Trial Order, p. 2).

6. Both defendants transact business and are found within the Northern District of California, Southern Division. (Pre-Trial Order, p. 2).

7. The action arises and is brought by the plaintiff under the antitrust laws of the United States, more particularly the Clayton Act, 15 U.S.C. §§ 18 and 25. (Pre-Trial Order, p. 1).

### Issues Relating To Line of Commerce

1. Is the production and sale of beer a line of commerce within the meaning of Section 7 of the Clayton Act and the appropriate product market for determining the effects on com-

petition of the acquisitions by defendant Jos. Schlitz Brewing Company of the assets of Burgermeister Brewing Corporation and of stock of John Labatt Limited?

2. Is the production and sale of all malt beverages a separate line of commerce within the meaning of Section 7 of the Clayton Act, and if so, is it an appropriate line of commerce to be considered in determining the effects on competition of the acquisitions challenged by the complaint?

3. Is the production and sale of each price level of beer, one of the malt beverages, a separate line of commerce within the meaning of Section 7 of the Clayton Act, and if so, is each level an appropriate line of commerce to be considered in determining the effects on competition of the acquisitions challenged by the complaint?

4. Is the production and sale of ale, another of the malt beverages, a separate line of commerce within the meaning of Section 7 of the Clayton Act, and if so, is it an appropriate line of commerce to be considered in determining the effects on competition of the acquisitions challenged by the complaint?

8. The term "beer", in the context of the relevant line of commerce, includes beer, lager, ale, porter, stout and malt liquor, even though there is some conflict in expert testimony and that of members of the industry as to ale. A single brewery can produce beer, lager, ale, porter, stout and malt liquor. Moreover, regardless of the niceties of definition, sales in the United States of lager, ale, porter, stout and malt liquor are so insignificant, compared with sales of beer, as to make the inclusion or exclusion of lager, ale, porter, stout and malt liquor, or any one or more of them, of no consequence to any issue in this case. (Tr. 387, line 20—393, line 19; Tr. 150, line 6—151, line 11; Tr. 1552, lines 6–8; Tr. 468, lines 1–5).

9. Beer is produced in unique production facilities, breweries, and is marketed through specialized vendors who are referred to as wholesalers or distributors. (Tr. 192, line 25—193, line 10; Tr. 158, lines 13–25; Tr. 1552, lines 6–8).

10. There is very little difference in price or quality between the cheapest and the most expensive ingredients used in brewing beer in the United States. (Tr. 316, lines 10–16; Tr. 404, lines 6–20; Tr. 405, lines 20–23; Tr. 389, lines 3–19).

11. Beer has its own pricing structure and sells at a wide spectrum of prices; in California, for example, the range is from 79 cents through $1.44 per six-pack of 12-oz. cans. (Pre-Trial Order pp. 85–115; Tr. 1517, line 1—1519, line 19).

12. For many years it has been the practice in the brewing industry to refer to various brands of beer by terms such as "premium beer", "regional beer" or "popularly priced beer" and "local price" or "shelf beer". The term premium beer has generally referred to those beers which have been priced somewhat higher than the popular or regional beers. Such premium beers include Budweiser (Anheuser-Busch, Inc.), Schlitz (Jos. Schlitz Brewing Co.), and Miller High Life (Miller Brewing Co.). Popularly priced or regional beers include such brands as Lucky Lager (General Brewing Co.), Burgermeister (Jos. Schlitz Brewing Co.), Hamms (Theo. Hamm Brewing Co.), and Falstaff (Falstaff Brewing Corp.). The so-called price beers are beers which generally are not extensively advertised and sell at a price below that of the popularly priced beers. Such beer is often sold by grocery store chains as private label beer, i. e., the specified chain has the exclusive right to sell beer under the label. Other beers exist which do not fit into any of the particular categories described above. For example, Coors beer and Olympia beer sell in California at prices midway between the premium and the popular level. Miller High Life sells in some areas, such as California, at a price above Budweiser and Schlitz. Other beers sell at a price midway between the popular and the price beer level. Some beers have moved from one category to another or have

shifted from a category to an in-between level. (Pre-Trial Order, p. 9; Tr. 1517–1519).

13. There are no significant differences in the costs of labor nor equipment for production of the various brands of beer. (Tr. 434, lines 6–15).

14. All brands and types of beer compete with each other in price, image, point of sale advertising, media advertising, shelf space, floor display, refrigerator position and in attention from wholesalers and retailers. (Tr. 114—116; Tr. 193, lines 11–17; Tr. 208, line 20—209, line 4; Tr. 316, line 9; Tr. 343, lines 16–22; Tr. 454, line 4; Tr. 585, line 21—587, line 4; Tr. 1236, line 21—1237, line 8; Tr. 1579, lines 1–11; Tr. 1583, line 18; Tr. 1588, line 18 et seq.; Tr. 1856, line 13—1857, line 24).

15. There is both public and industry recognition of beer as a separate and unique product. (Tr. 193, line 15; Tr. 386, line 20; Tr. 387, line 9; Tr. 454, lines 7–22; Tr. 1598, lines 13–20; Tr. 1856, line 24—1857, line 5; see also citations for Finding 14).

16. Beer is a line of commerce. (Findings 8–15, inclusive).

*Issues Relating To Section of the Country*

5. Are the following areas, or any of them, sections of the country within the meaning of Section 7 of the Clayton Act:

(a) the United States;

(b) the eight Western States of California, Oregon, Washington, Idaho, Montana, Nevada, Utah and Arizona;

(c) the State of California;

(d) the State of Hawaii;

(e) or some part of the United States less than the entire United States but larger than or different from the eight Western States;

and if so, is each or any such section a relevant geographic market to be considered in determining the effects on competition of the acquisitions challenged by the complaint?

17. The United States as a whole is a geographic market for the production and sale of beer. (Tr. 956, lines 21–22; Tr. 592, line 8; Tr. 482, lines 7–11).

18. The Eight Western States area consists of the contiguous States of California, Oregon, Washington, Idaho, Montana, Nevada, Utah and Arizona. Its boundaries are the Pacific Ocean, the Canadian and Mexican borders, and, approximately, the Continental Divide.

19. Freight rates are a substantial factor in the sale of beer. (Tr. 204, line 13; Tr. 91, lines 21–23; Tr. 313, lines 17–19; Tr. 451, line 19—452, line 10).

20. Most breweries and the bulk of brewing capacity in the western portion of the United States are located along the Pacific Coast. (Pre-Trial Order, pp. 47–49).

21. Freight rates make it more economical for brewers to supply beer to points west of the Continental Divide from Pacific Coast breweries, rather than from Eastern or Midwestern breweries. Brewers who have breweries both on the Pacific Coast and in the Midwest generally supply the Eight Western States area from their Pacific Coast breweries and supply areas east of the Eight Western States area from their Midwestern breweries. (Tr. 1354, line 16—1355, line 3; Tr. 584, line 11—585, line 3; Plaintiff's Exhibit 35).

22. Brewers attempt, for profit purposes, to sell a maximum quantity of their production as close as possible to the brewery at which it is produced. (Tr. 94, lines 2–11; Tr. 314, line 22).

23. Approximately 80% of all beer sold within the Eight Western States in 1963 was produced in that area. An additional 13.6% was produced in Denver, Colorado, just outside the area. (Pre-Trial Order, pp. 47–49, 65–68).

24. Over 94% of the beer produced in the Eight Western States in 1963 was sold in that area. (Pre-Trial Order, pp. 47–49, 65–68).

25. The Eight Western States area is the principal marketing territory for General Brewing; about 90% of its sales

are concentrated there. (Tr. 451, lines 6–11; Tr. 475, lines 15–25).

26. National brewers have, or, in the case of Schlitz, have had in the recent past, separate sales organizations to handle the western market. The great majority of brewers recognize the existence of a western market for beer. (Tr. 584, line 10; Tr. 199, lines 13–17; Tr. 1334, lines 10–14; Tr. 200, lines 5–12; Plaintiff's Exhibit 1, pp. 9–10).

27. The Eight Western States area is a separate geographic market for the production and sale of beer. (Findings 18–26, inclusive).

28. The State of California is an area of heavy production and consumption of beer. During the period between 1947 and 1963, consumption of beer in California has increased six times as much as the nationwide increase in consumption of beer. In 1963, California accounted for about 8% of the total amount of beer consumed in the United States. (Pre-Trial Order, pp. 13, 14, 46, 48, 64).

29. The State of California is an area of intense competition in the sale of beer. (Pre-Trial Order, pp. 14–46; Tr. 487, lines 1–8; Tr. 1360—1361; Tr. 960, line 20—961, line 3).

30. Approximately 60% of General Brewing's sales are made in the State of California. Prior to its acquisition by Schlitz, approximately 96% of Burgermeister's sales were made in the State of California. (Tr. 451, lines 3–5; Tr. 89, lines 20–23).

31. The State of California is recognized by the brewing industry as a separate sub-market for the production and sale of beer. (Tr. 112, line 16; Tr. 197, line 9; Tr. 313, line 18; Tr. 337, line 25; Tr. 456, line 15—457, line 6; Tr. 1888, lines 6–19; Tr. 338, lines 7–17).

32. The State of California is an integrated, homogeneous market for the production and sale of beer. (Tr. 110, lines 15–19).

33. The State of California is a separate geographic sub-market for the production and sale of beer. (Findings 28–31, inclusive).

34. The State of Hawaii is geographically isolated from the continental United States, and it has a unique group of beer consumers whose local pride requires special marketing techniques. (Tr. 457, lines 10–18; Tr. 1336, lines 14–17).

35. Approximately 6% of General Brewing's sales are made in Hawaii. This represented about 41.2% of the total amount of beer sold in Hawaii in 1963. (Tr. 476, lines 15–17; Plaintiff's Exhibit 34).

36. The State of Hawaii is a separate market for the sale of beer. (Tr. 457, lines 10–17).

37. The State of Hawaii is a separate geographic sub-market for the production and sale of beer. (Findings 34–36, inclusive).

*Issues Generated By The Schlitz Acquisition of An Interest in Labatt*

6. Will the reasonably probable effect of the acquisition by defendant Jos. Schlitz Brewing Company of stock of John Labatt Limited be substantially to lessen competition or to tend to create a monopoly in an appropriate line of commerce in one or more of the relevant sections of the country?

7. Will the reasonably probable effect of the indirect acquisition of an interest in General Brewing Corporation by defendant Schlitz be substantially to lessen competition or to tend to create a monopoly in an appropriate line of commerce in one or more relevant sections of the country?

8. Is John Labatt Limited a corporation engaged in commerce within the meaning of Section 7 of the Clayton Act?

9. Was the purchase of stock of John Labatt Limited by defendant Jos. Schlitz Brewing Company solely for the purpose of making an investment in Canada?

10. Is the acquisition of a stock interest in John Labatt Limited by defendant Schlitz an investment exempt from the prohibition of Section 7 of the Clayton Act?

38. Defendant Schlitz is the Nation's second largest brewer, with 1964 sales of $311,394,654 and with seven breweries located throughout the country. From 1954 to 1964, its share of the California market rose (with some intermediate ebb and flow) from 2.40% to 12.1%. (Pre-Trial Order, pp. 116, 36–46; Plaintiff's Exhibit 11).

39. In February 1964, Schlitz acquired 39.3% of the stock of John Labatt Limited, a sufficient amount for voting control of the latter. (Schlitz Answer to Complaint, p. 5, lines 17–20; Tr. 797, lines 5–11; Plaintiff's Exhibit 11, p. 5).

40. John Labatt Limited is the third largest Canadian brewer, with 1964 sales of $108,585,537 and with seven breweries located throughout Canada. (Pre-Trial Order, p. 117; Tr. 633, lines 16–22; Plaintiff's Exhibit 17).

41. John Labatt Limited controls 63.5% of the common stock of General Brewing Corporation. (Pre-Trial Order, p. 117; Defendant Schlitz Exhibit 198).

42. General Brewing was the 14th largest U. S. brewer in 1963, and has two plants in California, one in Washington, and one in Utah. General Brewing in 1963 ranked second in the California beer market, with 13.7% of sales, second in the Eight Western States market with 13.3% of sales, and first in the Hawaii market with 41% of sales. (Pre-Trial Order, pp. 56, 48, 49, 45, 65–67, 50).

43. A strong trend toward concentration exists in the brewing industry. Since 1952 the number of plants has decreased from 334 to 190 in 1964, and the number of companies has decreased from 307 to 144 in 1964, while tax paid withdrawals have increased from 84,293,-646 barrels to 96,247,413 barrels in 1964. (Pre-Trial Order, p. 71; Plaintiff's Exhibit 25).

44. The share of beer sales accounted for by the 10 largest and 25 largest brewers has increased from approximately 40% and 60%, in 1953, to approximately 57% and 82%, in 1963, respectively. (Pre-Trial Order, pp. 57–58; Plaintiff's Exhibits 26, 27).

45. The rank and market share of each of the 25 largest sellers of beer in the United States in each of the years 1939–1963 is shown in Appendix A hereof. (Pre-Trial Order, pp. 51–58).

46. A trend toward concentration also exists in the Eight Western States area and in California. (Pre-Trial Order, pp. 62, 75; Plaintiff's Exhibits 28, 30).

47. The trend toward concentration in the beer industry will continue unabated. (Tr. 328, line 22—329, line 10; Tr. 590, lines 7–10; Tr. 408, line 3—409, line 1).

48. Acquisitions and mergers have played an important part in the trend toward concentration in the brewing industry. A substantial number of these acquisitions and mergers involved the largest brewers and a majority were of regional firms in the larger size categories, which stand the best chance for independent survival. Schlitz has made many of these acquisitions. (Pre-Trial Order, pp. 118–127; Defendant Schlitz Exhibit 192; Tr. 2099, line 23—2100, line 4).

49. It is extremely difficult for a new firm to enter the United States brewing industry due to the great expense of buying or building a plant and acquiring sufficient business to support it. The present cost of building a million barrel brewing facility is between $30,000,000 and $35,000,000. So far as the record discloses, just one brewery, Carlings of Canada, has successfully entered the industry in the United States since 1947. (Tr. 409, line 7—411, line 21; Tr. 190, line 15—192, line 3).

50. Control of General Brewing by Schlitz will give Schlitz over 10% of the national beer market, raising it from second to first ranked, and will give the two largest brewers over 20% of the national beer market. (Pre-Trial Order, pp. 51–58).

51. The market share of each major seller of beer in the Eight Western States in 1963 and the total sales of beer in the Eight Western States in 1963 are shown in Appendix B hereof. (Pre-Trial Order, pp. 65–68; Plaintiff's Exhibit 53).

52. The tax paid withdrawals of each brewery operated in the Western States, for each of the years 1960 through 1963, inclusive, are set forth by State at pages 48 and 49 of the Pre-Trial Order, in evidence. (Pre-Trial Order, pp. 48–49).

53. Control of General Brewing by Schlitz will enhance the trend of acquisitions and mergers in the brewing industry and will substantially increase concentration in the brewing industry nationally, in the Eight Western States, in California, and in Hawaii. (Pre-Trial Order, pp. 51–59, 48–49, 65–67, 14–46, 50; Plaintiff's Exhibit 26–30, 32–34; Tr. 605, lines 12–13).

54. The market share of each major seller of beer in California and total beer sales, for each of the years 1933 through 1964, inclusive, is shown in Appendix C hereof. (Pre-Trial Order, pp. 11–46).

55. Control of General Brewing by Schlitz will give Schlitz six breweries, 22.9% of production, 23% of sales in the Eight Western States, making Schlitz the largest seller of beer in the area. (Pre-Trial Order, pp. 48–49, 65–67; Plaintiff's Exhibit 29).

56. Control of General Brewing by Schlitz will give Schlitz 38.9% of production and 26.8% of sales in California, making it the largest seller of beer in that state, and nearly twice as large as the second ranked firm. (Pre-Trial Order, pp. 48–49, 45; Plaintiff's Exhibits 32, 33).

57. The market share of each seller of beer in Hawaii and total sales of beer in Hawaii for each of the years 1961, 1962 and 1963 are shown in Appendix D hereof. (Pre-Trial Order, p. 50).

58. Control of General Brewing by Schlitz will give Schlitz 50.9% of beer sales in Hawaii. (Pre-Trial Order, p. 50; Plaintiff's Exhibit 34).

59. Distributors (also referred to as wholesalers) are extremely important to successful competition of brewers in the brewing industry. Control of General Brewing by Schlitz will place General's distributor "system" in Schlitz' hands and will result in a significant competitive advantage to Schlitz and a substantial competitive disadvantage to its competitors. (Tr. 335, lines 7–15; Tr. 347, line 7—350, line 3; Tr. 352, line 15—359, line 8; Tr. 212, lines 13–24; Tr. 213, line 24—214, line 1; Plaintiff's Exhibit 45; Tr. 217, line 19—218, line 1; Tr. 490, lines 1–3; Tr. 158, lines 13–25).

60. Control of General Brewing by Schlitz will result in a substantial lessening of competition in the sale of beer in the United States, the Eight Western States, the State of California, and the State of Hawaii. (Tr. 489, lines 17–24; Tr. 352, lines 15–19; Findings 38–67).

61. At the time Schlitz purchased its stock in John Labatt Limited, Labatt and General Brewing had formulated and partially put into effect plans to expand General Brewing eastward to become a national brewer. (Tr. 463, lines 2–25; Tr. 464, lines 6–19; Tr. 715, line 25—716, line 3; Tr. 780, line 3—782, line 13).

62. The plans of Labatt and General Brewing are based on General's need to overcome its natural disadvantages as a regional brewer, and Labatt's need and desire to market in the United States to meet the advertising spill-over advantage currently possessed by its largest competitor, Canadian Breweries Ltd. (Pre-Trial Order, p. 69; Tr. 462, line 12—463, line 1; Tr. 632, line 19—635, line 15).

63. In connection with the plans to expand General Brewing, and also in its role as the parent corporation, Labatt has given extensive practical and technical assistance to General Brewing of great value to the latter. (Tr. 635, lines 14–16; Tr. 703, line 2—708, line 21; Tr. 470, lines 17–19).

64. Labatt has also helped General Brewing to introduce a premium priced beer under the Labatt brand which General Brewing executives felt was needed.

(Tr. 709, line 17—710, line 23; Tr. 1185, lines 7–24; Tr. 1613, line 23—1614, line 13).

65. At the time of its acquisition of Labatt stock, Schlitz attempted to eliminate potential competition of Labatt by attempting to halt the introduction of Labatt beer into the United States by General Brewing. (Tr. 711, line 18—712, line 15; Plaintiff's Exhibit 7).

66. Labatt and General Brewing's plans represent substantial potential competition in the United States, the Eight Western States and California which will be eliminated if Schlitz is allowed to control Labatt. (Findings 60–65, supra).

67. Schlitz' acquisition of stock of Labatt will result in a substantial lessening of actual and potential competition, and will tend to create a monopoly, in the production and sale of beer in the United States as a whole, the Eight Western States, the State of California, and the State of Hawaii. (Findings 38–66, supra).

68. John Labatt Limited each year sells approximately $2,000,000 worth of beer in 20 States of the United States, located for the most part in the Midwest and eastern portions of the United States. This beer is produced in Labatt's Canadian breweries. (Tr. 783, line 2; Tr. 784, lines 2–5; Plaintiff's Exhibit 12).

69. To facilitate these sales, Labatt has organized a distribution system in the United States composed of two master distributors and a number of local distributors. (Tr. 784, lines 8–13).

70. In order to stimulate sales of its beer in the United States, Labatt provides advertising allowances, finances shared advertising programs, and makes partial payment of salesmen's salaries. (Tr. 788, line 16—790, line 4).

71. Labatt sales in the United States are supervised by Labatt's export manager, who spends one-third to one-half of his time in the United States working with the master distributors and local distributors. (Tr. 786, line 24—788, line 9).

72. Approximately 20% to 25% of the Labatt beer sold in the United States is shipped to the United States on Labatt-owned trucks. (Tr. 786, lines 4–6).

73. Orders for Labatt beer are placed by telephone by United States distributors to the brewery, sometimes as frequently as daily. (Tr. 785, lines 9–12).

74. Labatt deals directly with government agencies in the United States in obtaining approval for marketing its beer in the United States. (Tr. 790, line 5—791, line 4).

75. The continuous flow of Labatt beer from Canada to Labatt's distributors in the United States constitutes an engagement in foreign and interstate commerce by John Labatt Limited. (Tr. 783—790).

76. John Labatt Limited engages in commerce in the United States through its control of, and close business relationship with and assistance to, General Brewing Corporation. (Tr. 703, line 2—708, line 21; Pre-Trial Order, p. 117, lines 4–9).

77. From the outset of the negotiations Schlitz sought working control of John Labatt Limited. But for the issuance of the temporary restraining order, Schlitz obtained and would now have such control. (Tr. 1103, line 4; Tr. 1315, line 2; Tr. 717, lines 15–18; Tr. 824, lines 3–16).

78. Schlitz purchased 1,700,000 shares, or 39.3% of the Labatt stock at $23 (Canadian) a share at a price which was described to Labatt shareholders as "an historically high level" and one appearing "to discount future growth of the Company [Labatt] for some years." (Plaintiff's Exhibit 22).

79. Schlitz was correctly advised by the Labatt management that its acquisition of Labatt stock would meet with an adverse reaction from the Canadian public. (Tr. 719, lines 14–22; Tr. 765, line 6—766, line 13).

80. During the course of negotiations for Schlitz' acquisition of a controlling interest in Labatt, both parties recognized the possible anti-competitive con-

sequences of consummation. (Tr. 718, line 9—722, line 6).

81. The possibility of Labatt management marketing Schlitz brand beer was discussed but never resolved between Labatt and Schlitz. (Tr. 817, line 21—819, line 7).

82. During the course of negotiations Schlitz sought to dissuade Labatt from introducing the Labatt brand of beer through General Brewing. (Tr. 711, line 18—713, line 17; Plaintiff's Exhibit 7).

### Issues Generated By The Schlitz Acquisition of Burgermeister

11. May plaintiff challenge in these proceedings the acquisition of the assets of Burgermeister Brewing Corporation by defendant Schlitz?

12. Was Burgermeister Brewing Corporation a failing firm?

13. Will the reasonably probable effect of the acquisition by defendant Schlitz of all of the assets, except cash, of Burgermeister Brewing Corporation be substantially to lessen competition or to tend to create a monopoly in an appropriate line of commerce in one or more of the relevant sections of the country?

83. Shortly before the acquisition of Burgermeister by Schlitz, the Department of Justice requested Schlitz to submit detailed information concerning the transaction; in response, Schlitz submitted certain information concerning its acquisition of Burgermeister and relating to the business of each of the companies; after consideration of the information submitted by Schlitz, counsel for Schlitz was advised that the Department of Justice was not prepared to take any action at that time to block the Schlitz acquisition of Burgermeister; the Department of Justice took no action at that time to block the Schlitz acquisition of Burgermeister. (Defendant Schlitz Exhibits 52, 207; 53A–P, 207).

84. Defendant Schlitz did not submit a written request for written clearance of its acquisition of Burgermeister; (The record is barren of any proof that the Department of Justice gave clearance to the acquisition of Burgermeister by defendant Schlitz). (Defendant Schlitz Exhibit 207).

85. Defendant Schlitz requested and obtained clearance letters from the Department of Justice for its acquisition of the Hawaii Brewing Company and a Puerto Rican brewery. (Tr. 1312, line 10—1313, line 3).

86. Oral clearances for mergers or acquisitions are not given by the Antitrust Division. (Tr. 1781, line 2—1782, line 17).

87. The sales by dollar and volume and after-tax earnings by Burgermeister in the five years preceding its acquisition were as follows:

| Year | Sales | Volume (barrels) | After-Tax Earnings |
|------|-------|------------------|--------------------|
| 1957 | $37,319,900 | 973,501 | $1,013,829 |
| 1958 | 37,221,851 | 971,502 | 988,823 |
| 1959 | 38,197,664 | 974,347 | 944,687 |
| 1960 | 35,554,000 | 892,711 | 720,951 |
| 1961 | 29,154,891 | 726,533 | 408,602 |

———◆———

(Pre-Trial Order, pp. 43, 116; Plaintiff's Exhibits 3, 4; Defendant Schlitz Exhibits 53K, 53L).

88. In 1960, Burgermeister was the third largest selling California brewery accounting for 10.7% of all beer sold in the State of California. (Pre-Trial Order, p. 42).

89. Burgermeister's one brewery, located in San Francisco, California, was

completely rebuilt during the period from 1944 to 1948. (Tr. 89, lines 3–13).

90. In 1960 Burgermeister had one of the most modern plants, equipped with the finest draft beer equipment, in the United States. (Tr. 89, lines 14–16; Tr. 105, lines 21–24).

91. At the time of its acquisition by Schlitz, Burgermeister had an exceptionally strong distributor organization. (See Finding 59 as to the great value of this.) (Tr. 95, lines 19–23; Tr. 158, lines 5–10; Tr. 188, lines 8–9).

92. 1960 was the twenty-first consecutive year in which Burgermeister Brewing Corporation paid dividends to its shareholders. (Plaintiff's Exhibit 4, p. 2).

93. At the time its assets were purchased by Schlitz, Burgermeister Brewing Corporation had no long-term outstanding debts. (Plaintiff's Exhibit 4, p. 5).

94. At the time its assets were purchased by Schlitz, Burgermeister Brewing Corporation was a solvent corporation in a healthy financial position. (Plaintiff's Exhibits 3, 4; Tr. 105, lines 10–24; Tr. 1543, line 16—1544, line 22).

95. At the time its assets were purchased by Schlitz, Burgermeister Brewing Corporation was not in a deteriorating or declining condition nor could it be termed a failing plant. (Plaintiff's Exhibits 3, 4; Tr. 187, line 25—188, line 9; Tr. 2065, lines 3–6).

96. In 1960 Miller Brewing Company offered to purchase Burgermeister for $11,000,000. This offer was raised to $12,000,000 in March of 1961. (Tr. 160, lines 7–8; Tr. 169, lines 5–8; Tr. 187, lines 4–11).

97. On December 29, 1961, defendant Schlitz purchased the assets of Burgermeister, except for cash in the amount of $1,700,000, for $12,039,250. (Plaintiff's Exhibit 1, p. 3).

98. Had Burgermeister in 1961 spent its usual amount for advertising, including point-of-purchase advertising and service costs, the net earnings for 1961 would have been over one million dollars. (Tr. 104, lines 12–19; Tr. 139, lines 1–25).

99. From 1948 to 1961 several national brewers who had no brewing facilities in California, acquired California breweries. (Pre-Trial Order, pp. 12, 13, 40–43, 120, 121).

100. The volume and market share of firms brewing or selling beer in California for the years 1955 through 1964, inclusive, are shown at pages 37–46 of Appendix C hereof. (Pre-Trial Order, pp. 37–46).

101. For the years 1955 through 1960, Burgermeister's sales in California, its rank and its percentage of the California market were as follows:

| Year | Calif. Sales (barrels) | Rank | Percent of Market |
|------|------------------------|------|-------------------|
| 1955 | 977,561 | 2 | 16.12 |
| 1956 | 943,762 | 2 | 14.97 |
| 1957 | 887,798 | 3 | 13.53 |
| 1958 | 886,359 | 3 | 12.78 |
| 1959 | 887,106 | 4 | 11.93 |
| 1960 | 805,289 | 3 | 10.7 |

(Pre-Trial Order, pp. 37–42).

102. For the years 1955 through 1960, Schlitz sales in California, its rank and its percentage of the California market were as follows:

| Year | Calif. Sales (barrels) | Rank | Percent of Market |
|------|------------------------|------|-------------------|
| 1955 | 243,190 | 9 | 4.01 |
| 1956 | 264,860 | 9 | 4.20 |
| 1957 | 283,692 | 9 | 4.32 |
| 1958 | 273,331 | 10 | 3.94 |
| 1959 | 292,559 | 10 | 3.94 |
| 1960 | 293,238 | 11 | 3.9 |

(Pre-Trial Order, pp. 37–42).

103. The dollar value of beer sales by Burgermeister Brewing Corporation for each of the years 1957 through 1960 in

each of the States in which it sold are shown on Appendix E hereof. (Plaintiff's Exhibit 5.).

104. 1961 sales for Burgermeister are not reliable indicia of the effect of the Schlitz acquisition of the Burgermeister assets because such sales were seriously distorted by the demoralizing effect of awareness, in the industry, its distributors and corporate personnel, of negotiations for the sale of Burgermeister which commenced in 1960. (Tr. 104, line 4—105, line 4; Tr. 1544, lines 3–11).

105. In 1961 Schlitz was the tenth ranking brewer in California and had 3.6% of the California market. In 1962 Schlitz was the third ranking brewer in California and had 12.3% of the California market. (Pre-Trial Order, pp. 43, 44).

106. At the time of its acquisition by Schlitz, Burgermeister was a substantial independent competitor in California. (Tr. 497, lines 14–16; Tr. 1620, lines 5–8; Pre-Trial Order, pp. 42, 43).

107. After Schlitz acquired Burgermeister, Schlitz attempted to have its wholesalers carry a full line of Schlitz products. (Tr. 1270, lines 7–13).

108. When Schlitz acquired Burgermeister, it was able to choose between the Schlitz and the Burgermeister wholesaler. Schlitz thus was able to strengthen its wholesaler organization by choosing the more effective of the two wholesalers. (Plaintiff's Exhibit 2).

109. In the first six months following the acquisition of Burgermeister by Schlitz, Schlitz terminated on its own initiative its relationship with thirty-nine beer distributors in various market areas of the West. Fourteen of these were former Burgermeister distributors, and twenty-five of these were former Schlitz distributors. Eight of the fourteen former Burgermeister distributors were in California, and twenty-three of the twenty-five former Schlitz distributors were in California. (Answer of Defendant Jos. Schlitz Brewing Company to Plaintiff's First Set of Interrogatories to Said Defendant, pp. 55–76).

110. Schlitz' ability to choose between the Schlitz and Burgermeister wholesaler when it acquired Burgermeister caused substantial detriment to other brewers whose beers were formerly being sold by either the Schlitz or Burgermeister wholesaler. (Tr. 1609, lines 5–19; Tr. 1611, lines 20–25; Tr. 493, line 17—493A, line 2; Tr. 188, line 25—190, line 14; Tr. 220, line 8—222, line 20; Tr. 290, line 14—292, line 6).

111. General Brewing Company and Miller Brewing Company are two examples of breweries who were detrimentally affected by the Schlitz acquisition of Burgermeister in that their distributor organizations were disrupted. (Tr. 1203, lines 2–7; Tr. 1226, lines 3–14; Tr. 190, lines 2–14; Tr. 205, lines 6–12; Tr. 212, line 3—214, line 16; Tr. 226, lines 11–19).

112. At the time of the Schlitz acquisition of Burgermeister, Miller Brewing Company had twenty-two joint distributors with Burgermeister. After the acquisition, six of these dropped Miller and took on Schlitz, six dropped Burgermeister and stayed with Miller, two went out of business after having Burgermeister withdrawn from them, four took on Schlitz and retained Miller, and four did not take on Schlitz. (Tr. 188, line 25—189, line 10; Tr. 220, line 8—222, line 20).

113. At the time of its acquisition of Burgermeister, Schlitz was distributing its popular priced beer, Old Milwaukee, in the middle west, southern, and southeastern States. (Tr. 1252, lines 5–17).

114. Old Milwaukee's marketing area has been expanded so that it is now being sold in substantially every other State where Burgermeister is not presently marketed. (Tr. 1304, line 24—1305, line 9).

115. Since its acquisition of Burgermeister, Schlitz has succeeded in expanding Burgermeister's selling area

eastward until it has met that of Old Milwaukee. (Tr. 1346, line 21—1347, line 6).

116. In 1961 Schlitz was aware that in order to improve its position on the West Coast, it could either introduce its own popular priced brand or acquire a going brand. (Plaintiff's Exhibit 2, pp. 2, 3).

117. It would have been very costly for Schlitz to introduce its own brand on the West Coast in 1961. (Plaintiff's Exhibit 2, p. 2).

118. But for its acquisition of the Burgermeister assets, Schlitz would have introduced its own popular priced beer on the West Coast. (Plaintiff's Exhibit 2).

119. The changes in its distributor organization that Schlitz effectuated after it acquired the assets of Burgermeister resulted in a substantial lessening of competition and a tendency to create a monopoly in the production and sale of beer in the Eight Western States area and in California. (Findings 107–112, supra).

120. The failure of Schlitz to introduce its own popular priced brand beer into the West Coast because of its acquisition of the assets of Burgermeister resulted in a substantial lessening of actual and potential competition and a tendency to create a monopoly in the production and sale of beer in the Eight Western States area and in California. (Findings 113–118, supra).

121. The elimination of Burgermeister as a substantial independent competitor by Schlitz' purchase of the assets of Burgermeister resulted in a substantial lessening of competition and a tendency to create a monopoly in the production and sale of beer in the Eight Western States area and in California. (Findings 95, 106, supra).

122. The purchase of the assets of Burgermeister by Schlitz further enhanced the trend toward concentration in the brewing industry, resulting in a substantial lessening of competition and a tendency to create a monopoly in the production and sale of beer in the Eight Western States area and in California. (Findings 43–49, 99, supra).

123. The acquisition of the assets of Burgermeister by Schlitz resulted in a substantial lessening of actual and potential competition and a tendency to create a monopoly in the production and sale of beer in the Eight Western States area and in California. (Findings 99–118, supra).

124. The evidence was not sufficient to establish that the Schlitz acquisition of Burgermeister resulted in a substantial lessening of competition, actual or potential, nor in a tendency to create a monopoly in the production and sale of beer in the United States or in Hawaii.

125. The acquisition by Schlitz of the assets of Burgermeister, in connection with Schlitz' subsequent acquisition of Labatt stock and thereby control of General Brewing, is further evidence of the continuing trend toward concentration in the brewing industry in general and of the attempts by Schlitz, in particular, to increase its sales and market share by the acquisition of competitors. (Findings 38, 43, 44, 45, 46, 47, 48, 50, 53, 59, 65, 80, 82, 85, 97, 104, 105, 106, 107, 109, 111, 112, 118, 119–24).[2]

2. The Pre-Trial Order, under the heading "Purposes of Defendant Schlitz", stated Issues 14 and 15 as follows. "14. If the evidence adduced at trial shows that the acquisition of a stock interest in John Labatt Limited by defendant Schlitz was for the purpose of participating in the Canadian market, is this a transaction subject to Section 7 of the Clayton Act? 15. Is the acquisition by defendant Schlitz of a stock interest in John Labatt Limited subject to Section 7 of the Clayton Act regardless of the purpose of the acquisition?" As to Issue 14, Schlitz did adduce some evidence in support of the claim that its acquisition of the stock interest in Labatt was for the purpose of participating in the Canadian market. But it was not convincing evidence. As the Findings show, the focus of Schlitz' interest in the acquisition was really in connection with

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter of the complaint herein and the parties hereto.

█ 2. The production and sale of beer is a line of commerce within the meaning of Section 7 of the Clayton Act, the relevant provisions of which are set forth in Appendix F hereof. Beer is the appropriate product market for determining the effects on competition of the acquisitions by defendant Jos. Schlitz Brewing Company of the assets of Burgermeister Brewing Corporation and of stock of John Labatt Limited.

United States v. Continental Can Co., 378 U.S. 441, 456–457, 84 S.Ct. 1738, 12 L.Ed.2d 953 (1964).

Brown Shoe Co. v. United States, 370 U.S. 294, 325–326, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962).

United States v. E. I. duPont de Nemours & Co., 353 U.S. 586, 593–595, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957).

A. G. Spalding & Bros., Inc. v. Federal Trade Commission, 301 F.2d 585, 604 (3rd Cir. 1962).

Crown Zellerbach Corporation v. Federal Trade Commission, 296 F.2d 800, 811 (9th Cir. 1961), cert. den., 370 U.S. 937, 82 S.Ct. 1581, 8 L.Ed.2d 807 (1962).

American Crystal Sugar Co. v. Cuban-American Sugar Co., 259 F.2d 524, 529–530 (2d Cir. 1958).

Hamilton Watch Co. v. Benrus Watch Co., 114 F.Supp. 307, 311 (D.Conn. 1953), affirmed, 206 F.2d 738 (2d Cir.).

█ 3. There are no distinguishable price levels of beer which constitute relevant product sub-markets within the line of commerce found by the Court and designated as the production and sale of beer.

United States v. Continental Can Co., 378 U.S. 441, 456–457, 84 S.Ct. 1738, 12 L.Ed.2d 953 (1964).

Brown Shoe Co. v. United States, 370 U.S. 294, 325–326, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962).

Hamilton Watch Co. v. Benrus Watch Co., 114 F.Supp. 307, 311 (D.Conn. 1953), affirmed, 206 F.2d 738 (2d Cir.).

█ 4. The following areas are each sections of the country for the production and sale of beer, within the meaning of Section 7 of the Clayton Act, and each is a relevant geographic market to be considered in determining the effects on competition of the acquisitions challenged by the complaint:

the United States;

the Eight Western States of California, Oregon, Washington, Idaho, Montana, Nevada, Utah and Arizona;

the State of California;

the State of Hawaii.

United States v. El Paso Natural Gas Co., 376 U.S. 651, 657, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964).

United States v. The Philadelphia National Bank, 374 U.S. 321, 357, 360–361, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963).

Brown Shoe Co. v. United States, 370 U.S. 294, 336–337, 82 S.Ct. 1502, 8 L. Ed.2d 510 (1962).

Crown Zellerbach Corporation v. Federal Trade Commission, 296 F.2d 800, 817 (9th Cir. 1961), cert. den., 370 U.S. 937, 82 S.Ct. 1581, 8 L.Ed.2d 807 (1962).

the United States market and areas therein. In any case, the issue posed by 14 is ultimately one of law and the law is clear that even if *the* purpose of Schlitz, or *a* purpose of Schlitz, was for participation in the Canadian market, that would not immunize against the proscriptions of Section 7 of the Clayton Act. As to Issue 15, the only "purpose" which might have justified the acquisition under the provisions of Section 7 of the Clayton Act would have been purchase of the Labatt stock "solely for investment" as provided and spelled out in the statute. There is no credible evidence to support any claim that the Schlitz purchase of Labatt stock was "solely for investment" and the claim, if made by Schlitz, appears to have been abandoned.

American Crystal Sugar Co. v. Cuban-American Sugar Co., 152 F.Supp. 387, 398 (S.D.N.Y.1957), affirmed, 259 F.2d 524 (2d Cir. 1958).

United States v. Bethlehem Steel Corp., 168 F.Supp. 576, 599–603 (S.D.N.Y. 1960).

■ 5. The reasonably probable effect of the acquisition by defendant Jos. Schlitz Brewing Company of stock of John Labatt Limited (and thereby control of General Brewing Company) will be substantially to lessen competition and to tend to create a monopoly in the production and sale of beer in the United States as a whole, the Eight Western States, the State of California, and the State of Hawaii.

United States v. Aluminum Co. of America, 377 U.S. 271, 84 S.Ct. 1283, 12 L.Ed.2d 314 (1964).

United States v. Continental Can Co., 378 U.S. 441, 84 S.Ct. 1738, 12 L.Ed.2d 953 (1964).

United States v. Penn-Olin Chemical Co., 378 U.S. 158, 84 S.Ct. 1710, 12 L.Ed.2d 775 (1964).

United States v. El Paso Natural Gas Co., 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964).

United States v. The Philadelphia National Bank, 374 U.S. ·321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963).

Brown Shoe Co. v. United States, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962).

American Crystal Sugar Co. v. Cuban-American Sugar Co., 152 F.Supp. 387 (S.D.N.Y. 1957), affirmed, 259 F.2d 524 (2d Cir. 1958).

United States v. Bethlehem Steel Corp., 168 F.Supp. 576 (S.D.N.Y.1960).

■ 6. John Labatt Limited is a corporation engaged in commerce within the meaning of Section 7 of the Clayton Act.

Clayton Act, Section 1, 38 Stat. 730 (15 U.S.C. § 12).

■ 7. The acquisition of a stock interest in John Labatt Limited by defendant Schlitz is not an investment exempt from the prohibition of Section 7 of the Clayton Act.

Hamilton Watch Co. v. Benrus Watch Co., 114 F.Supp. 307, 316 (D.Conn. 1953), affirmed, 206 F.2d 738 (2d Cir.).

■ 8. The Department of Justice may challenge the acquisition of Burgermeister Brewing Corporation by defendant Schlitz in this proceeding and is not estopped or restrained from doing so by its failure to bring suit at the time of the acquisition.

United States v. New Orleans Chapter, Associated General Contractors of America, Inc., 382 U.S. 17, 86 S.Ct. 33, 15 L.Ed.2d 5 (1965), reversing 238 F.Supp. 273 (E.D.La.1964).

United States v. Socony-Vacuum Oil Co., Inc., 310 U.S. 150, 226, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).

United States v. Grinnell Corporation, 30 F.R.D. 358, 363 (D.R.I.1962).

■ 9. At the time of its acquisition by defendant Schlitz, Burgermeister Brewing Corporation was not a failing firm.

International Shoe Co. v. Federal Trade Commission, 280 U.S. 291, 301–302, 50 S.Ct. 89, 74 L.Ed. 431 (1929).

Erie Sand and Gravel Company v. Federal Trade Commission, 291 F.2d 279, 280–281 (3rd Cir. 1961).

■ 10. The acquisition of all of the assets, except cash, of the Burgermeister Brewing Corporation by defendant Schlitz had, and continues to have, the reasonably probable effect of substantially lessening competition and tending to create a monopoly in the production and sale of beer in the Eight Western States area and in the State of California. Such lessening of competition was and is actual competition in the State of California and primarily potential competition in the Eight Western States area.

United States v. Aluminum Co. of America, 377 U.S. 271, 84 S.Ct. 1283, 12 L.Ed.2d 314 (1964).

United States v. Continental Can Co., 378 U.S. 441, 84 S.Ct. 1738, 12 L.Ed.2d 953 (1964).

United States v. Penn-Olin Chemical Co., 378 U.S. 158, 84 S.Ct. 1710, 12 L.Ed.2d 775 (1964).

United States v. El Paso Natural Gas Co., 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964).

United States v. The Philadelphia National Bank, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963).

Brown Shoe Co. v. United States, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962).

American Crystal Sugar Co. v. Cuban-American Sugar Co., 152 F.Supp. 387 (S.D.N.Y.1957), affirmed, 259 F.2d 524 (2d Cir. 1958).

United States v. Bethlehem Steel Corp., 168 F.Supp. 576 (S.D.N.Y.1960).

█ 11. The acquisition of the assets, except cash, of the Burgermeister Brewing Corporation by defendant Jos. Schlitz Brewing Company, as charged in the complaint herein, violated Section 7 of the Clayton Act.

█ 12. The acquisition of stock of John Labatt Limited by defendant Jos. Schlitz Brewing Company, as charged in the complaint herein, violated Section 7 of the Clayton Act.

█ 13. The relief necessary to accomplish the alleviation of the unlawful effects of the violations found herein will be the divestiture by defendant Schlitz of the assets of Burgermeister Brewing Corporation and of the stock of John Labatt Limited.

14. Such relief will require appropriate exercise of the injunctive power of this court upon defendant Jos. Schlitz Brewing Company and defendant General Brewing Company.

## COMMENTS ON THE FINDINGS OF FACT PROPOSED BY DEFENDANT JOS. SCHLITZ BREWING CO.

The proposed Findings of Fact submitted by the defendant Schlitz were closely examined and carefully considered by the trial court. In the main, Schlitz' Findings have been rejected, because in their most important aspects, they are not supported by the evidence. No attempt is here made to detail the reasons for this conclusion as to each and every Finding of Fact proposed by Schlitz. Instead, the following comments serve to point out the major areas of disagreement between the court's view of the evidence and of the applicable law as contrasted to those urged by defendant Schlitz.

### The Relevant Line of Commerce

Schlitz maintains that premium and non-premium beer constitute separate lines of commerce within the meaning of Section 7 of the Clayton Act. This conclusion is grounded largely on the assumptions that there is a clear price differential between premium and non-premium beer and that sales of premium beer have held a constant 20% of the national beer market.

█ Insofar as Schlitz' conclusion is based on a price differential between premium and non-premium beer, it is not supported by the evidence nor by the applicable case law. The trial court has found that in California, beer prices range over a wide spectrum from $.79 to $1.44 a six-pack. There is no rational way of choosing a point along this price spectrum and saying that all beer which sells above that point constitutes a line of commerce, or even a sub-market, apart from all beer which sells below that point. This is precisely what the Supreme Court refused to do in Brown Shoe Co. v. United States, 370 U.S. 294, 325–326, 82 S.Ct. 1502 (1962), when it rejected the defendant's position that medium-price and low-price shoes constituted separate lines of commerce for purposes of Section 7. In fact, an examination of the criteria listed by the Supreme Court in *Brown Shoe* and the evidence adduced here on the issue of the relevant line of commerce shows that each and every factor mentioned in the Supreme Court's opinion points toward a finding that all beer is

the only relevant line of commerce in the present case.[3]

This conclusion is not vitiated by a showing that some percentage of beer consumers will purchase only premium, or only non-premium beer. Even Schlitz admits that there is "an area in which consumers cross over from premium to non-premium beers". (Schlitz Proposed Finding of Fact No. 132.) This conclusion was expressed almost unanimously by the witnesses from the brewing industry. In United States v. Continental Can Co., 378 U.S. 441, 84 S.Ct. 1738 (1964), the Supreme Court held that the government could establish that metal and glass containers constituted a single line of commerce without proving that the area of competitive overlap between them was complete. The Court said:

> "There may be some end uses for which glass and metal do not and could not compete, but complete interindustry competitive overlap need not be shown. We would not be true to the purpose of the Clayton Act's line of commerce concept as a framework within which to measure the effect of mergers on competition were we to hold that the existence of noncompetitive segments within a proposed market area precludes its being treated as a line of commerce." 378 U.S. at 457, 84 S.Ct. at 1747.

Clearly, there is at least as great a "competitive overlap" between premium and non-premium beers as between metal and glass containers. Furthermore, the testimony establishes conclusively that this competition for the beer consumers' dollar is reflected in competition among *all* beers for shelf space, servicing at retail outlets · and point-of-sale advertising space.

*The Relevant Section of the Country*

Schlitz insists that the entire United States is the only relevant section of the country in this case. It contends that to quench their thirst, consumers can and do turn to brewers located anywhere in the nation. However, Schlitz seems to overlook the fact that only three brewers —Schlitz, Miller and Anheuser-Busch— actually compete on a national basis. The competitive "mix" of suppliers in the beer industry in any area or section of the country is composed of the three national brewers and a group of local and regional brewers. The evidence in this case shows that freight rates and population density and growth are among the most important factors relied upon by local and regional brewers in determining their geographic markets. Freight rates for shipping beer across the Continental Divide strongly support the conclusion that the Eight Western States area is a relevant section of the country; the population density and growth of California strongly supports the conclusion that it is a relevant section of the country. Furthermore, both of the acquired American breweries made at least 90% of their sales in California or in the Eight Western States area.

In much quoted language in its *Brown Shoe* decision, the Supreme Court said that "[t]he geographic market selected must * * * both 'correspond to the commercial realities' of the industry and be economically significant." 370 U.S. at 336–337, 82 S.Ct. at 1530. An examination of the brewing industry in general and of the competitors involved here in particular, shows that the trial court's Findings on the relevant sections of the country are completely consistent with the *Brown Shoe* test.

3. "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it. However, within this broad market, well-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes. * * * The boundaries of such a submarket may be determined by examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." 370 U.S. at 325, 82 S.Ct. at 1253.

To support its position that the entire United States is the only relevant section of the country, Schlitz points out that the Miller Brewing Co. has only one brewery —in Milwaukee, Wisconsin—and that Miller competes successfully west of the Continental Divide. However, it was established at the trial that Miller sold its beer in California at a price considerably above that of the other "national premiums", Schlitz and Budweiser. It seems clear that Miller would be an even stronger competitor in the West if it could move its beer into western outlets at a lower cost for freight. Apparently, Miller feels this way also, since it has now made a firm offer to purchase General Brewing's Azusa brewery in Southern California.

### The Probable Effect on Competition of Schlitz' Acquisition of Labatt and General Brewing

The record supports Schlitz' contention that Labatt is not now a substantial competitor in the United States. However, Schlitz goes further and states that "there is no evidence that Labatt plans to expand its efforts in the United States". (Schlitz Proposed Finding No. 61.) This statement is patently erroneous. Both Mr. John H. Moore, President of John Labatt, Ltd., and Mr. John B. Cronyn, Executive Vice President of John Labatt, Ltd., testified that Labatt did desire and intend to expand its operations into the United States markets and that it intended to use General Brewing as a vehicle for accomplishing this purpose. (Tr. 780, line 13—782, line 13; Tr. 632, line 19—633, line 11; Tr. 635, lines 5–13). The evidence clearly demonstrates that Labatt had the desire, the intention and the resourcefulness to enter the United States markets and to make General Brewing a stronger competitor in those markets.

Schlitz makes much of Labatt's early setbacks in entering the United States markets through its licensing agreement with General Brewing. In United States v. El Paso Natural Gas Co., 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964), the Supreme Court held that the acquisition of Pacific Northwest Pipeline Corp. by El Paso violated Section 7 of the Clayton Act because Pacific Northwest was a strong *potential competitor* in the California market. The Court pointed out that Pacific Northwest had the desire and the ability to enter this market. El Paso argued that Pacific Northwest had already tried to sell gas in California but had failed. The Court rejected this argument, saying:

"That might be weighty if a market presently saturated showed signs of petering out. But it is irrelevant in a market like California, where incremental needs are booming." 376 U.S. at 660, 84 S.Ct. at 1049.

It is appropriate to point out that the evidence in the present case shows that California's demand for beer is booming almost as quickly as its demand for gas. Like Pacific Northwest, Labatt is anxious and able to help meet the demand.

Schlitz' position in regard to General Brewing is that Schlitz never wanted control of General Brewing and that Schlitz would use its power as controlling stockholder of Labatt to arrange for a sale of General Brewing. This argument, even if supported by the evidence, is irrelevant to the issue of whether Schlitz' acquisition of Labatt and General Brewing violated Section 7 of the Clayton Act. "[T]he test of a violation of § 7 is whether, *at the time of suit,* there is a reasonable probability that the acquisition is likely to result in the condemned restraints." United States v. E. I. du Pont de Nemours & Co., 353 U.S. 586, 607, 77 S.Ct. 872, 884, 1 L.Ed.2d 1057 (1957) (emphasis added). At the time of suit, Schlitz did in fact control General Brewing.

Furthermore, even if Schlitz' contention about its intentions vis-a-vis General Brewing is deemed relevant to the issue of the terms of the trial court's decree, the facts of the present case show that the ends of the Clayton Act will not be served by allowing Schlitz to keep Labatt and divest itself of General Brew-

ing. Preliminarily, it should be pointed out that the trial court is not convinced that from the outset of its negotiations with Labatt, Schlitz had no desire to control General Brewing. If this were true, Schlitz could have gone a great deal further in making sale of General Brewing a prerequisite for its purchase of Labatt stock. But, even accepting Schlitz' contention at face value, it is clear that Labatt ownership and support of General Brewing is most likely to maintain, and even increase, competition in United States brewing industry markets.

Entry into American brewing markets by new American firms is highly unlikely, and the large established Canadian brewers represent the most probable sources of potential substantial competition in the United States markets. But, if General Brewing were to be sold by Schlitz, the most likely buyer would be one of the larger American brewing firms. Both of the other large Canadian breweries already have an interest in an American brewing company, and Schlitz probably would not desire to increase the chances of strong potential competition from Canada. The smaller American brewing companies, on the other hand, probably would not have the resources to purchase General Brewing and give it the necessary financial and technical help needed to reverse its present downward trend. The sale of General Brewing to one of the larger American breweries, or even to a Canadian brewery which already has a substantial interest in the United States brewing industry, might well create new antitrust problems and is, therefore, not at all desirable. See United States v. E. I. du Pont de Nemours, 366 U.S. 316, 333, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961).

### The Probable Effect on Competition of Schlitz' Acquisition of Burgermeister

Schlitz places great emphasis on what it describes as Burgermeister's deteriorating financial condition. (See, e. g., Schlitz Proposed Findings 16–19, 28). However, the evidence conclusively establishes that Burgermeister was not a failing firm within the doctrine expounded by the Supreme Court in International Shoe Co. v. Federal Trade Commission, 280 U.S. 291, 50 S.Ct. 89, 74 L.Ed. 431 (1930). Furthermore, as the trial court's Findings point out, Burgermeister had a modern plant, a healthy balance sheet and a strong group of beer wholesalers. Of course, it is true that Burgermeister's sales and profits were declining at the time of the Schlitz acquisition. However, this is undoubtedly true of many firms which decide to sell out to a competitor. Allowing an acquiring company to successfully raise the defense that its acquired former competitor showed declining sales and profits in the years immediately preceding the acquisition surely would provide an exception to Section 7 large enough to eviscerate the statute.

Schlitz asks the trial court to find that there is "no evidence that when a wholesaler adds a new brand to his line he reduces his efforts on behalf of the other brands he is handling." (Schlitz Proposed Finding No. 46). This argument misses the point. It is clear that most brewers believe that a wholesaler needs a full price line of beers in order to compete most effectively. (Tr. 430, lines 17–22; Tr. 246, line 24—247, line 2; Tr. 303–304; Tr. 615, line 17—616, line 11). Furthermore, most brewers would like to have wholesalers who handle only their products, and there is a trend in this direction in the beer industry. (Tr. 245, lines 5–16; Tr. 1573—1574; Tr. 302, lines 5–16). When a brewer like Schlitz acquires a full price line of beers, it is in a position to select the most effective wholesalers of these beers and to require these wholesalers to carry the full line of Schlitz products. The evidence shows that the wholesalers selected by Schlitz will concentrate their efforts on Schlitz products, while those who have lost either Burgermeister, General Brewing's Lucky Lager, or Schlitz, will be less effective outlets for other brewers who do not market a full price line of beers. Schlitz carried out this process of selecting the most effective of the Schlitz or

Burgermeister wholesalers after it acquired Burgermeister, and it is probable that Schlitz would do the same thing with the General Brewing wholesalers if it were allowed to control General Brewing. Schlitz' potential power in this important aspect of competition in the beer industry is somewhat analogous to the situation in the *Brown Shoe* case. There, in discussing the vertical anti-competitive effects of the Brown-Kinney merger, the Supreme Court noted:

> "[I]t is apparent both from past behavior of Brown and from the testimony of Brown's President, that Brown would use its ownership of Kinney to force Brown shoes into Kinney stores." 370 U.S. at 332, 82 S.Ct. at 1527.

The Court pointed out that one effect of the merger, therefore, would be to foreclose sections of the market to other shoe manufacturers who sold their shoes in Kinney stores.

Although Schlitz does not "own" the beer wholesalers who sold Burgermeister or who now sell Lucky Lager, it is clear that Schlitz could and did "force" its full line of products into some outlets and take its products away from other outlets. In either case, the wholesalers involved become less effective distributors for the products of other brewers. Thus, the Schlitz acquisitions of both American brewing companies have had and would continue to have serious anti-competitive consequences at the important wholesaler level in the beer industry.

The Court has prepared a Final Judgment and Decree consonant with all of the foregoing. A copy thereof appears as Appendix G.

# APPENDIX A

16. **Leading Brewers in the United States.** Attached hereto are tables as follows:

(a) Pp. 150, 151. A list of the brewers in the United States who, at various times, have appeared among the leading 25 based on volume of annual sales.

(b) Pp. 152–154. A table showing by years the brewers who were the leading brewers in the United States in specified years (not complete for all years) based on sales for such year and showing their volume of sales in thousands of barrels (last "000" omitted) for such year and their rank for such year.

(c) P. 155. A table showing by certain years the total sales of the leading 25 brewers and the percentage of the total United States market for beer the leading 25 brewers had.

The sources from which the data for the above tables was taken were providing data on the brewers who were in the top 25 in certain years and for these provided certain other data but not complete data for all years. It resulted that there are gaps in the data. For example, if a brewer had ranked 26 in every year no data would be shown for such brewer although in many years that brewer out-ranked brewers for whom data is shown. It follows that the mere fact that no data is shown for a brewer in a given year should not be taken as indicating that brewer was not operating in that year.

### Brewers Who Have Been in the Top 25 at Some Time After 1939 and Head Office Location

1. Acme Brewing Co., San Francisco, Calif.
2. Anheuser-Busch, Inc., St. Louis, Mo.
3. Associated Brewing Co. (Pfeiffer), Detroit, Mich.
4. (P) Ballantine & Sons, Newark, N. J.
5. Burger Brewing Co., Cincinnati, Ohio
6. Blatz Brewing Co., Milwaukee, Wisc.
7. Burgermeister Brewing Corp. (San Francisco), San Francisco, Calif.
8. Carling Brewing Co. (Brewing Corp. of America), Cleveland, Ohio
9. (Adolph) Coors Co., Golden, Colo.
10. Drewrys Limited U.S.A., Inc., South Bend, Ind.
11. Duquesne Brewing Co., Pittsburgh, Pa.
12. Falstaff Brewing Co., St. Louis, Mo.
13. Feigenspan Brewing Co., Newark, N. J.
14. Fort Pitt Brewing Co., Sharpsburg, Pa.
15. General Brewing Corp. (Lucky Lager), San Francisco, Calif.
16. Genesee Brewing Co., Rochester, N. Y.
17. Goebel Brewing Co., Detroit, Mich.
18. Griesedieck Bros., St. Louis, Mo.
19. Griesedieck-Western Brewing Co., Belleville, Ill.
20. Gunther Brewing Co., Baltimore, Md.
21. Theo. Hamm Brewing Co., St. Paul, Minn.
22. Hudepohl Brewing Co., Cincinnati, Ohio
23. International Breweries, Inc., Detroit, Mich.
24. Jackson Brewing Co., New Orleans, La.
25. John F. Trommer, Inc., Brooklyn, N. Y.
26. (G.) Krueger Brewing Co., Newark, N. J.
27. Liebmann Breweries, Inc., Brooklyn, N. Y.
28. Lone Star Brewing Co., San Antonio, Texas
29. Los Angeles Brewing Co., Los Angeles, Calif.
30. Miller Brewing Co., Milwaukee, Wisc.
31. Minneapolis Brewing Co., Minneapolis, Minn.
32. Narragansett Brewing Co., Cranston, R. I.
33. National Brewing Co., Baltimore, Md.
34. Olympia Brewing Company, Olympia, Wash.
35. Pabst Brewing Company, Milwaukee, Wisc.
36. Pearl Brewing Co., San Antonio, Texas
37. Peter Fox Brewing Co., Chicago, Ill.
38. Piel Bros., Brooklyn, N. Y.
39. Pittsburgh Brewing Co., Pittsburgh, Pa.

40. Red Top Brewing Co., Cincinnati, Ohio
41. Jacob Ruppert, New York, N. Y.
42. (The F. & M.) Schaefer Brewing Co., Brooklyn, N. Y.
43. (Jos.) Schlitz Brewing Co., Milwaukee, Wisc.
44. (C) Schmidt & Sons, Inc., Philadelphia, Pa.
45. (Jacob) Schmidt Brewing Co., St. Paul, Minn.
46. Stegmaier Brewing Co., Wilkes-Barre, Pa.
47. Stroh Brewing Co., Detroit, Mich.
48. Terre Haute Brewing Co., Terre Haute, Ind.

Leading Brewers showing Rank (R) and Volume in thousands of barrels (Vol.) (last "000" omitted)

| # | Brewer | 1939 R | 1939 Vol | 1940 R | 1940 Vol | 1941 R | 1941 Vol | 1942 R | 1942 Vol | 1943 R | 1943 Vol | 1944 R | 1944 Vol | 1945 R | 1945 Vol | 1946 R | 1946 Vol | 1947 R | 1947 Vol | 1948 R | 1948 Vol | Brewer | # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Acme | 19 | 500 | 16 | 533 | 12 | 659 | 10 | 848 | 9 | 1,008 | 7 | 1,310 | 7 | 1,360 | 8 | 1,300 | 11 | 1,159 | 20 | 863 | Acme | 1 |
| 2 | Anheuser-Busch | 1 | 2,306 | 1 | 2,468 | 1 | 3,090 | 1 | 3,492 | 1 | 3,565 | 1 | 3,814 | 1 | 3,760 | 2 | 3,156 | 4 | 3,609 | 4 | 4,050 | Anh.-Busch | 2 |
| 3 | Associated (Pfeiffer) | | | 36 | 323 | 34 | 375 | 29 | 460 | 20 | 650 | 24 | 537 | 25 | 545 | 25 | 512 | 21 | 780 | 14 | 1,094 | Associated | 3 |
| 4 | Ballantine | 6 | 1,289 | 5 | 1,322 | 5 | 1,626 | 4 | 1,887 | 3 | 2,630 | 3 | 2,793 | 4 | 2,810 | 3 | 2,662 | 3 | 3,726 | 2 | 4,138 | Ballantine | 4 |
| 5 | Burger | | | | | | | | | | | | | | | | | | | | | Burger | 5 |
| 6 | Blatz | 10 | 679 | 13 | 568 | 18 | 578 | 13 | 701 | 11 | 920 | 10 | 1,062 | 10 | 1,093 | 9 | 1,210 | 9 | 1,491 | 9 | 1,389 | Blatz | 6 |
| 7 | Burgermeister | | | | | | | | | 37 | 235 | 34 | 264 | 35 | 269 | 36 | 243 | 37 | 363 | 33 | 462 | Burgermeister | 7 |
| 8 | Carling (Br. Co. of Am.) | 22 | 403 | 29 | 354 | 21 | 457 | 19 | 615 | 15 | 730 | 12 | 950 | 11 | 1,043 | 17 | 715 | 26 | 650 | 32 | 464 | Carling | 8 |
| 9 | Coors | | | | | | | | | | | | | 34 | 316 | 35 | 284 | 36 | 395 | 31 | 470 | Coors | 9 |
| 10 | Drewrys | | | | | | | | | 33 | 330 | 33 | 312 | 33 | 335 | 34 | 331 | 31 | 533 | 34 | 494 | Drewrys | 10 |
| 11 | Duquesne | 9 | 680 | 9 | 690 | 8 | 950 | 9 | 975 | 10 | 960 | 11 | 1,016 | 12 | 1,034 | 11 | 979 | 10 | 1,167 | 12 | 1,110 | Duquesne | 11 |
| 12 | Falstaff | 13 | 622 | 10 | 685 | 7 | 1,029 | 7 | 1,229 | 7 | 1,226 | 9 | 1,255 | 8 | 1,338 | 10 | 1,149 | 8 | 1,651 | 5 | 2,304 | Falstaff | 12 |
| 13 | Feigenspan | 11 | 659 | 14 | 566 | 16 | 597 | 15 | 660 | 25 | 611 | | | | | | | | | | | Feigenspan | 13 |
| 14 | Fort Pitt | 32 | 225 | 40 | 295 | 29 | 415 | 22 | 553 | | | 16 | 737 | 18 | 714 | 16 | 740 | 16 | 979 | 10 | 1,202 | Fort Pitt | 14 |
| 15 | General (Lucky Lager) | | | | | | | | | 27 | 549 | 22 | 568 | 22 | 599 | 23 | 559 | 25 | 658 | 25 | 694 | General | 15 |
| 16 | Genesee | | | | | | | | | 34 | 315 | 31 | 330 | 32 | 350 | 29 | 435 | 30 | 540 | 28 | 622 | Genesee | 16 |
| 17 | Goebel | | | | | | | | | 28 | 541 | 21 | 597 | 21 | 639 | 19 | 635 | 18 | 894 | 16 | 1,022 | Goebel | 17 |
| 18 | Griesedieck Bros. | | | | | | | | | 31 | 431 | 28 | 426 | 28 | 461 | 30 | 413 | 26 | 618 | 30 | 534 | Griesedieck Bros. | 18 |
| 19 | Griesedieck-Western | | | | | | | | | 36 | 280 | 32 | 325 | 32 | 350 | 32 | 377 | 28 | 610 | 15 | 1,057 | Griesedieck-W. | 19 |
| 21 | Hamm's | 8 | 780 | 8 | 694 | 9 | 800 | 11 | 710 | 12 | 800 | 13 | 800 | 15 | 799 | 12 | 805 | 13 | 1,000 | 11 | 1,200 | Hamm's | 21 |
| 22 | Hudepohl | 24 | 385 | 28 | 365 | 19 | 499 | 21 | 560 | 18 | 690 | 20 | .... | 29 | 453 | 31 | 390 | 32 | 500 | 29 | 573 | Hudepohl | 22 |
| 24 | Jackson | | | | | | | | | 30 | 475 | 29 | 425 | 14 | 820 | 15 | 765 | 33 | 479 | 34 | 460 | Jackson | 24 |
| 25 | John Trommer | 14 | 574 | 15 | 556 | 17 | 592 | 20 | 576 | 24 | 617 | 17 | 700 | 13 | 850 | 14 | 791 | 12 | 1,020 | 18 | 990 | John Trommer | 25 |
| 26 | Krueger | 23 | 386 | 20 | 415 | 20 | 493 | 23 | 552 | 22 | 631 | 19 | 680 | .Gunther.. | | 7 | 1,300 | 15 | 980 | 22 | 835 | Krueger | 26 |
| 27 | Liebmann | 12 | 633 | 11 | 670 | 10 | 789 | 8 | 979 | 8 | 1,160 | 8 | 1,275 | 9 | 1,325 | | | 6 | 2,100 | 7 | 2,110 | Liebmann | 27 |
| 29 | Los Angeles | | | | | | | | | | | 23 | 541 | 24 | 553 | 26 | 496 | 27 | 615 | 24 | 751 | Los Angeles | 29 |
| 30 | Miller | 17 | 543 | 18 | 522 | 15 | 617 | 12 | 707 | 16 | 720 | 15 | 741 | 17 | 729 | 19 | 644 | 20 | 806 | 19 | 911 | Miller | 30 |
| 31 | Minneapolis | | | | | | | | | | | 25 | 535 | 23 | 590 | 22 | 580 | 23 | 705 | 26 | 693 | Minneapolis | 31 |
| 33 | National | | | | | | | | | 35 | 300 | 30 | 344 | 31 | 355 | 34 | 331 | 38 | 300 | 36 | 430 | National | 33 |
| 34 | Olympia | | | | | | | | | | | | | | | 37 | 341 | 35 | 409 | 37 | 365 | Olympia | 34 |
| 35 | Pabst | 3 | 1,650 | 2 | 1,730 | 2 | 2,080 | 3 | 2,500 | 4 | 2,629 | 4 | 2,200 | 3 | 2,833 | 1 | 3,320 | 2 | 3,732 | 3 | 4,114 | Pabst | 35 |
| 36 | Peter Fox | | | | | | | 25 | 541 | 13 | 741 | ..Pearl.. | | 30 | 394 | 33 | 358 | 34 | 416 | 35 | 436 | Pearl | 36 |
| 38 | Piel | | | | | 21 | 450 | 16 | 650 | 32 | 416 | 27 | 479 | 27 | 522 | 28 | 468 | 29 | 560 | 27 | 650 | Piel | 38 |
| 39 | Pittsburgh | 20 | 484 | 19 | 520 | 21 | 450 | 16 | 650 | 17 | 700 | | | | | 18 | 650 | 24 | 692 | | | Pittsburgh | 39 |
| 40 | Red Top | 31 | 325 | 26 | 375 | | | | | 19 | 660 | 18 | 690 | 19 | 710 | 13 | 800 | 14 | 985 | 21 | 855 | Red Top | 40 |
| 41 | Rupert | 4 | 1,325 | 6 | 1,228 | 6 | 1,345 | 6 | 1,426 | 6 | 1,615 | 6 | 1,785 | 6 | 1,885 | 6 | 1,785 | 7 | 1,902 | 8 | 1,638 | Rupert | 41 |
| 42 | Schaefer | 5 | 1,305 | 4 | 1,390 | 4 | 1,678 | 5 | 1,707 | 5 | 1,801 | 5 | 1,931 | 5 | 3,050 | 5 | 2,150 | 5 | 2,400 | 6 | 2,250 | Schaefer | 42 |
| 43 | Schlitz | 2 | 1,651 | 3 | 1,570 | 3 | 1,993 | 2 | 2,730 | 2 | 3,173 | 2 | 3,246 | 2 | 3,062 | 2 | 2,649 | 1 | 3,991 | 1 | 4,280 | Schlitz | 43 |
| 44 | C. Schmidt | 15 | 573 | 12 | 588 | 13 | 646 | 14 | 694 | 14 | 735 | 14 | 791 | 16 | 797 | 20 | 588 | 17 | 971 | 13 | 1,099 | C. Schmidt | 44 |
| 45 | J. Schmidt | 7 | 810 | 7 | 721 | 11 | 720 | 17 | 625 | 21 | 633 | | | | | | | | | | | J. Schmidt | 45 |
| 46 | Stegmaier | 21 | 433 | 21 | 433 | 21 | 450 | 24 | 510 | 23 | 625 | 20 | 632 | 20 | 649 | 24 | 543 | 19 | 877 | 23 | 822 | Stegmaier | 46 |
| 47 | Stroh | 18 | 536 | 20 | 497 | 14 | 620 | 18 | 621 | 26 | 582 | 26 | 493 | 26 | 524 | 27 | 472 | 22 | 743 | 17 | 1,008 | Stroh | 47 |
| 48 | Terre Haute | | | | | | | | | | | | | | | | | | | | | Terre Haute | 43 |

Leading Brewers showing Rank (R) and Volume in thousands of barrels (Vol.) (last "000" omitted)

| No. | Brewer | 1949 R | 1949 Vol | 1950 R | 1950 Vol | 1951 R | 1951 Vol | 1952 R | 1952 Vol | 1953 R | 1953 Vol | 1954 R | 1954 Vol | 1955 R | 1955 Vol | 1956 R | 1956 Vol | 1957 R | 1957 Vol | 1958 R | 1958 Vol | Brewer (1958) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | Anheuser-Busch | 2 | 4,526 | 2 | 4,889 | 2 | 5,479 | 2 | 6,034 | 1 | 6,711 | 1 | 5,829 | 2 | 5,617 | 2 | 5,864 | 1 | 6,116 | 1 | 6,982* | Anh.–Busch |
| 3 | Associated (Pfeiffer) | 9 | 1,438 | 3 | 1,618 | 10 | 1,555 | 11 | 1,504 | 14 | 1,442 | 18 | 1,066 | 18 | 1,208 | 22 | 1,031 | 25 | 911 | 26 | 845 | Associated |
| 4 | Ballantine | 3 | 4,514 | 1 | 4,375 | 3 | 3,990 | 4 | 4,038 | 4 | 3,882 | 3 | 3,713 | 3 | 3,953 | 3 | 3,967 | 4 | 3,982 | 5 | 4,036 | Ballantine |
| 6 | Blatz | 8 | 1,598 | 9 | 1,746 | 9 | 1,799 | 10 | 1,662 | 20 | 1,062* | 21 | 975 | 24 | 928 | 24 | 949 | 18 | 1,247 | 13 | 1,700 | Blatz |
| 7 | Burgermeister | 36 | 496 | 29 | 623 | 19 | 838 | 19 | 961 | 21 | 1,018 | 19 | 1,036 | 20 | 1,070 | 21 | 1,033 | 23 | 974 | 24 | 972 | Burgermeister |
| 8 | Carling | 39 | 362 | 36 | 502 | 29 | 669 | 20 | 893 | 19 | 1,096 | 17 | 1,340 | 9 | 2,655 | 7 | 2,997 | 6 | 3,151 | 6 | 3,531 | Carling |
| 9 | Coors | 30 | 605 | 28 | 667 | 31 | 660 | 26 | 757 | 26 | 812 | 22 | 922 | 21 | 1,045 | 18 | 1,090 | 19 | 1,147 | 17 | 1,410 | Coors |
| 10 | Drewrys | 31 | 600 | 25 | 730 | 23 | 772 | 16 | 1,222 | 15 | 1,420 | 15 | 1,372 | 15 | 1,425 | 15 | 1,432 | 16 | 1,369 | 15 | 1,527 | Drewrys |
| 11 | Duquesne | 13 | 1,176 | 15 | 1,081 | 17 | 1,094 | 30 | 631* | 23 | 923 | 23 | 904 | 23 | 988 | 20 | 1,046 | 22 | 1,062 | 21 | 1,032 | Duquesne |
| 12 | Falstaff | 5 | 2,474 | 7 | 2,287 | 7 | 2,295 | 8 | 2,277 | 6 | 2,911 | 6 | 3,290 | 4 | 3,653 | 4 | 3,870 | 3 | 4,292 | 3 | 4,502* | Falstaff |
| 14 | Fort Pitt | 12 | 1,177 | 19 | 963 | 22 | 805 | | | | | | | | | | | | | | | Fort Pitt |
| 15 | General (Lucky) | 21 | 857 | 14 | 1,096 | 14 | 1,242 | 12 | 1,475 | 10 | 1,740 | 10 | 1,775 | 13 | 1,824 | 12 | 1,960 | 12 | 2,024 | 10 | 2,265* | General |
| 16 | Genesee | 26 | 710 | 27 | 677 | 26 | 730 | 23 | 790 | 25 | 815 | 28 | 810 | 28 | 788 | 27 | 800 | 27 | 804 | 29 | 780 | Genesee |
| 17 | Goebel | 16 | 1,142 | 12 | 1,258 | 13 | 1,408 | 13 | 1,445 | 12 | 1,580 | 16 | 1,346 | 19 | 1,116 | | | | | | | Goebel |
| 18 | Griesedieck Bros. | 27 | 694 | 20 | 810 | 20 | 817 | 21 | 825 | | | | | | | | | | | | | Griesedieck Bros. |
| 19 | Griesedieck-Western | 10 | 1,436 | 11 | 1,442 | 12 | 1,418 | 14 | 1,424 | 13 | 1,484 | | | | | | | | | | | Griesedieck West. |
| 20 | Gunther | 28 | 671 | 31 | 601 | 25 | 745 | | | | | | | | | | | | | | | Gunther |
| 21 | Hamm's | 18 | 1,038 | 17 | 1,053 | 15 | 1,150 | 15 | 1,387 | 11 | 1,686 | 8 | 2,249 | 7 | 3,072 | 5 | 3,325 | 5 | 3,376 | 7 | 3,394* | Hamm's |
| 23 | International | | | | | | | | | | | | | | | | | | | 27 | 826 | International |
| 24 | Jackson | 33 | 586 | 26 | 703 | 28 | 697 | 25 | 767 | 22 | 934 | 20 | 1,006 | 22 | 1,008 | 19 | 1,051 | 20 | 1,107 | 22 | 1,030 | Jackson |
| 25 | John Trommer | 19 | 986 | | | | | | | | | | | | | | | | | | | John Trommer |
| 26 | Krueger | 20 | 866 | 24 | 750 | | | | | | | | | | | | | | | | | Krueger |
| 27 | Liebmann | 7 | 1,875 | 5 | 2,662 | 5 | 2,800 | 6 | 2,856 | 5 | 3,085 | 5 | 3,410 | 6 | 3,162 | 8 | 2,882 | 7 | 2,966 | 9 | 2,847* | Liebmann |
| 28 | Lone Star | | | | | 34 | 449 | 31 | 501 | 30 | 577 | 29 | 667 | 29 | 725 | 28 | 749 | 28 | 739 | 28 | 785 | Lone Star |
| 29 | Los Angeles (Pabst) | 22 | 794 | 8 | 2,105 | 6 | 2,612 | 5 | 3,043 | 8 | 2,138* | 9 | 2,096 | 10 | 2,191 | 11 | 2,246 | 11 | 2,221 | 11 | 2,210 | Los Angeles |
| 30 | Miller | 11 | 1,330 | | | | | | | | | | | | | | | | | | | Miller |
| 31 | Minneapolis | 25 | 724 | | | | | | | | | | | | | | | | | | | Minneapolis |
| 32 | Narragansett | 29 | 610 | 30 | 609 | 27 | 705 | 28 | 681 | 27 | 804 | 25 | 838 | 25 | 897 | 28 | 851 | 26 | 906 | 25 | 888 | Narragansett |
| 33 | National | 34 | 519 | 33 | 551 | 30 | 665 | 24 | 775 | 24 | 840 | 24 | 845 | 17 | 1,286 | 17 | 1,115 | 17 | 1,301 | 19 | 1,294* | National |
| 34 | Olympia | 37 | 475 | 32 | 595 | | | 27 | 725 | 29 | 764 | 27 | 815 | 26 | 865 | 23 | 1,016 | 21 | 1,104 | 20 | 1,249 | Olympia |
| 35 | Pabst | 4 | 4,048 | 4 | 3,419 | 4 | 3,950 | 3 | 4,047 | 3 | 4,250* | 4 | 3,500 | 5 | 3,275 | 6 | 3,115 | 9 | 2,700 | 4 | 4,250* | Pabst |
| 36 | Pearl | 38 | 394 | 34 | 530 | 33 | 607 | 29 | 678 | 28 | 770 | 26 | 836 | 27 | 863 | 25 | 905 | 24 | 943 | 23 | 981 | Pearl |
| 38 | Piel Bros. | 35 | 510 | 23 | 767 | 18 | 1,090 | 18 | 1,200 | 16 | 1,375 | 14 | 1,395 | 16 | 1,365 | 16 | 1,350 | 15 | 1,435 | 16 | 1,420* | Piel Bros. |
| 39 | Pittsburgh | 24 | 736 | 21 | 800 | 21 | 812 | | | | | | | | | | | | | | | Pittsburgh |
| 40 | Red Top | 23 | 785 | 22 | 769 | | 765 | | | | | | | | | | | | | | | Red Top |
| 41 | Rupert | 17 | 1,079 | 13 | 1,253 | 11 | 1,517 | 9 | 1,800 | 9 | 2,005 | 11 | 1,769 | 14 | 1,638 | 14 | 1,539 | 14 | 1,490 | 18 | 1,406* | Rupert |
| 42 | Schaefer | 6 | 1,927 | 6 | 2,652 | 7 | 2,600 | 7 | 2,485 | 7 | 2,541 | 7 | 2,690 | 8 | 2,655 | 9 | 2,720 | 8 | 2,940 | 8 | 2,887* | Schaefer |
| 43 | Schlitz | 1 | 4,679 | 1 | 5,097 | 1 | 5,716 | 1 | 6,347 | 2 | 5,255* | 2 | 5,406 | 1 | 5,780 | 1 | 5,941 | 2 | 6,024 | 2 | 5,893* | Schlitz |
| 44 | C. Schmidt | 15 | 1,148 | 16 | 1,068 | 16 | 1,116 | 17 | 1,213 | 17 | 1,374 | 12 | 1,516 | 12 | 1,917 | 13 | 1,850 | 13 | 1,757 | 14 | 1,661 | C. Schmidt |
| 47 | Stroh | 32 | 596 | 35 | 514 | 32 | 636 | 22 | 822 | 18 | 1,135 | 13 | 1,450 | 11 | 2,153 | 10 | 2,709 | 10 | 2,584 | 12 | 1,925 | Stroh |
| 48 | Terre Haute | 14 | 1,150 | 18 | 971 | | | | | | | | | | | | | | | | | Terre Haute |

* Strike

| | Brewer | 1959 | | 1960 | | 1961 | | 1962 | | 1963 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | R. | Vol. | R. | Vol. | R. | Vol. | R. | Vol. | R. | Vol. |
| 2 | Anheuser-Busch | 1 | 8,065 | 1 | 8,477 | 1 | 8,508 | 1 | 9,035 | 1 | 9,397 |
| 3 | Associated | 26 | 900 | 24 | 918 | 24 | 932 | 24 | 948 | 21 | 1,151 |
| 4 | Ballantine | 6 | 4,325 | 6 | 4,409 | 6 | 4,510 | 6 | 4,538 | 6 | 4,478 |
| 7 | Burgermeister | 21 | 974 | | | | | | | | |
| 8 | Carling | 5 | 4,418 | 4 | 4,822 | 5 | 5,047 | 4 | 5,359 | 4 | 5,681 |
| 9 | Coors | 14 | 1,649 | 13 | 1,907 | 11 | 2,303 | 11 | 2,773 | 9 | 3,054 |
| 10 | Drewrys | 15 | 1,629 | 15 | 1,612 | 15 | 1,651 | 14 | 1,948 | 12 | 2,602 |
| 11 | Duquesne | 20 | 1,098 | 20 | 1,046 | 22 | 1,007 | 22 | 1,003 | 24 | 1,010 |
| 12 | Falstaff | 3 | 4,748 | 3 | 4,911 | 4 | 5,128 | 5 | 5,310 | 5 | 5,548 |
| 15 | General | 11 | 2,178 | 11 | 2,168 | 12 | 2,237 | 12 | 2,160 | 14 | 1,982 |
| 16 | Genesee | 27 | 789 | 27 | 805 | 26 | 880 | 23 | 965 | 22 | 1,100 |
| 21 | Hamm's | 7 | 3,552 | 7 | 3,907 | 7 | 3,714 | 8 | 3,724 | 7 | 3,826 |
| 23 | International | 24 | 932 | 23 | 919 | | | | | | |
| 24 | Jackson | 23 | 961 | 22 | 950 | 23 | 964 | 21 | 1,032 | 23 | 1,018 |
| 27 | Liebmann | 9 | 2,929 | 9 | 2,950 | 9 | 2,987 | 9 | 2,992 | 10 | 3,018 |
| 28 | Lone Star | 26 | 802 | 25 | 895 | 25 | 903 | 25 | 895 | 25 | 900 |
| 30 | Miller | 10 | 2,359 | 10 | 2,377 | 10 | 2,707 | 10 | 2,805 | 11 | 2,830 |
| 32 | Narragansett | 25 | 905 | 26 | 894 | 21 | 1,094 | 20 | 1,161 | 20 | 1,226 |
| 33 | National | 19 | 1,342 | 18 | 1,355 | 18 | 1,375 | 18 | 1,381 | 18 | 1,401 |
| 34 | Olympia | 18 | 1,415 | 16 | 1,497 | 16 | 1,558 | 16 | 1,742 | 16 | 1,776 |
| 35 | Pabst | 4 | 4,500 | 5 | 4,738 | 3 | 5,217 | 3 | 5,844 | 3 | 6,672 |
| 36 | Pearl | 22 | 968 | 21 | 1,023 | 17 | 1,429 | 17 | 1,484 | 17 | 1,599 |
| 38 | Piel | 16 | 1,511 | 17 | 1,481 | 19 | 1,360 | | | | |
| 41 | Jacob Rupert | 17 | 1,430 | 19 | 1,305 | 20 | 1,200 | 19 | 1,209 | 19 | 1,269 |
| 42 | Schaefer | 8 | 3,050 | 8 | 3,203 | 8 | 3,467 | 7 | 3,778 | 8 | 3,750 |
| 43 | Schlitz | 2 | 5,863 | 2 | 5,694 | 2 | 5,767 | 2 | 6,869 | 2 | 7,833 |
| 44 | C. Schmidt | 13 | 1,732 | 14 | 1,802 | 14 | 1,855 | 15 | 1,871 | 15 | 1,941 |
| 47 | Stroh | 12 | 2,111 | 12 | 2,075 | 13 | 2,029 | 13 | 2,037 | 13 | 2,045 |

## SALES OF 25 TOP BREWERS

| Year | Thousands of Barrels | Percent of National Market |
|------|---------------------|---------------------------|
| 1939 | | |
| 1940 | | |
| 1941 | | 41.5 |
| 1942 | | 42.2 |
| 1943 | | 41.4 |
| 1944 | | 39.7 |
| 1945 | | 41.1 |
| 1946 | | 40.3 |
| 1947 | | 46.0 |
| 1948 | | 49.25 |
| 1949 | | 51.5 |
| 1950 | | 55.2 |
| 1951 | | 57.7 |
| 1952 | | 60.2 |
| 1953 | | 61.3 |
| 1954 | | 62.1 |
| 1955 | | 64.9 |
| 1956 | | 67.5 |
| 1957 | 58,418 | 69.25 |
| 1958 | 59,537 | 70.52 |
| 1959 | 64,649 | 73.8 |
| 1960 | 66,441 | 75.61 |
| 1961 | 68,949 | 77.4 |
| 1962 | 72,861 | 79.9 |
| 1963 | 77,107 | 82.2 |

# APPENDIX B

## BEER SALES IN VARIOUS STATES (IN BARRELS)

| | California [1] | | | Idaho [2] | | | Montana [2] | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1961 | 1962 | 1963 | 1961 | 1962 | 1963 | 1961 | 1962 | 1963 |
| Anheuser-Busch, Inc. | 526,241 | 577,282 | 1,033,218 | 8,993 | 9,667 | 9,279 | 33,975 | 33,209 | 31,855 |
| Arizona Brewing Co. | 28,667 | 29,042 | 29,185 | — | — | — | — | — | — |
| Blitz-Weinhard Co. | 1,323 | 1,597 | 1,343 | 2,973 | 1,980 | 8,638 | 501 | — | 725 |
| Burgermeister Brewing [4] | 653,898 | — | — | 396 | — | — | — | — | — |
| Carling Brewing Co. | 19,471 | 21,691 | 24,840 | 19,603 | 19,952 | 19,618 | 1,149 | 7,726 | 1,239 |
| Adolph Coors Co. | 717,511 | 982,924 | 1,193,795 | 44,674 | 47,516 | 56,698 | — | — | — |
| Falstaff Brewing Corp. | 385,893 | 389,650 | 350,835 | — | — | — | — | — | — |
| General Brewing Corp. | 1,416,973 | 1,333,185 | 1,169,151 | 69,188 | 67,959 | 64,391 | 52,814 | 57,225 | 54,523 |
| Grace Bros. Brewing Co. | 150,808 | 137,433 | 131,146 | — | — | — | — | — | — |
| Great Falls Brewing Co. | — | — | — | 1,124 | 1,363 | 1,118 | 129,253 | 122,471 | 116,741 |
| Hamm Brewing Co., Theo. | 943,827 | 1,012,495 | 992,580 | 4,421 | 9,692 | 11,743 | 20,493 | 19,449 | 50,576 |
| Maier Brewing Co. | 457,525 | 463,825 | 566,983 | — | — | — | — | — | — |
| Miller Brewing Co. | 231,067 | 234,855 | 227,821 | 2,321 | 3,063 | 2,709 | 5,805 | 6,093 | 9,645 |
| Olympia Brewing Co. | 771,658 | 847,570 | 837,440 | 77,672 | 83,047 | 86,132 | 16,213 | 31,126 | 44,608 |
| Pabst Brewing Co. | 642,218 | 648,863 | 661,670 | 3,227 | 3,011 | 1,533 | 1,883 | 1,316 | 791 |
| Regal Pale Brewing Co. [5] | 219,834 | 190,590 | — | — | — | — | — | — | — |
| Schlitz Brewing Co., Jos. | 283,278 | 996,983 | 1,120,482 | 1,768 | 1,721 | 1,809 | 23,756 | 26,072 | 28,185 |
| Sicks' Rainier Brewing | 62,677 | 67,350 | 67,301 | 18,923 | 17,667 | 17,997 | 50,115 | 54,103 | 54,775 |
| All Other Companies [6] | 203,696 | 198,769 | 212,512 | 24,485 | 21,424 | 12,766 | 103,817 | 100,259 | 74,304 |
| Total | 7,716,565 | 8,134,104 | 8,620,302 | 279,768 | 288,062 | 294,431 | 439,774 | 459,049 | 467,967 |

[1] Data from California Brewers Association (based on California State tax data) except Blitz-Weinhard figure which was obtained directly from that company.

[2] Data from State taxing authority.

[4] Sales combined with Jos. Schlitz Brewing Co. after 1961.

[5] Purchased by Maier Brewing Company in 1963.

[6] Each with less than 100,000 barrels sales in each year in the West. Actual amount of such sales for Nevada and Arizona is unknown, but comparison of total obtained from individual firm figures with published total beer sales for each of these States indicates it is very small.

BEER SALES IN VARIOUS STATES (IN BARRELS)—Continued

| | Nevada[3] | | | Oregon[2] | | | Utah[2] | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1961 | 1962 | 1963 | 1961 | 1962 | 1963 | 1961 | 1962 | 1963 |
| Anheuser-Busch | 22,881 | 27,401 | 30,557 | 19,197 | 21,994 | 23,349 | 5,022 | 5,134 | 5,724 |
| Arizona | 3,677 | 3,068 | 3,033 | — | — | — | 6,390 | ,5,050 | 4,433 |
| Blitz | — | — | — | 180,377 | 196,384 | 235,744 | — | — | 802 |
| Burgermeister[4] | — | — | — | 12,040 | — | — | — | — | — |
| Carling | 508 | 435 | 890 | 150,403 | 137,329 | 135,849 | — | — | — |
| Coors | 74,636 | 104,202 | 117,716 | — | — | — | 80,745 | 95,364 | 102,238 |
| Falstaff | 9,817 | 9,421 | 8,824 | — | — | — | — | — | — |
| General | 41,382 | 41,170 | 39,847 | 93,104 | 91,975 | 87,838 | 95,692 | 94,647 | 100,708 |
| Grace | 1,173 | 1,625 | 1,927 | 213 | 422 | 291 | — | — | — |
| Hamm | 28,122 | 32,661 | 39,863 | 35,787 | 37,036 | 42,259 | — | — | — |
| Maier | 294 | 809 | 3,699 | 4,323 | 3,989 | 3,808 | — | — | — |
| Miller | 8,861 | 10,087 | 10,496 | 13,236 | 15,603 | 16,108 | 4,649 | 4,856 | 4,238 |
| Olympia | 19,111 | 21,690 | 23,084 | 225,146 | 241,145 | 239,503 | 4,891 | 13,745 | 18,493 |
| Pabst | 472 | 256 | 123 | 2,685 | 2,840 | 2,297 | 4,244 | 4,065 | 2,497 |
| Schlitz | 19,232 | 28,552 | 33,657 | 4,520 | 20,492 | 28,728 | 6,005 | 5,322 | 7,777 |
| Sicks' | 115 | — | — | 44,588 | 45,378 | 50,931 | — | — | — |
| All other[6] | — | — | — | 35,629 | 40,346 | 24,489 | 31,687 | 30,514 | 25,063 |
| Total | 230,281 | 281,377 | 313,716 | 821,248 | 854,933 | 891,194 | 239,325 | 258,697 | 271,973 |

[2] Data from State taxing authority.

[3] Data obtained directly from firms listed.

[4] Sales combined with Jos. Schlitz Brewing Co. after 1961.

[6] Each with less than 100,000 barrels sales in each year in the West. Actual amount of such sales for Nevada and Arizona is unknown, but comparison of total obtained from individual firm figures with published total beer sales for each of these States indicates it is very small.

BEER SALES IN VARIOUS STATES (IN BARRELS)—Continued

| | Washington [2] | | | Arizona [3] | | | Wyoming | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1961 | 1962 | 1963 | 1961 | 1962 | 1963 | 1961 | 1962 | 1963 |
| Anheuser-Busch | 27,331 | 32,834 | 32,650 | 67,358 | 81,771 | 88,634 | 20,422 | 21,488 | 21,633 |
| Arizona | — | — | — | 100,219 | 90,486 | 94,451 | — | — | — |
| Blitz | 31,185 | 31,594 | 49,282 | — | — | — | — | — | — |
| Burgermeister | 3,414 | — | — | — | — | — | — | — | — |
| Carling | 178,663 | 156,771 | 149,137 | 1,050 | 2,589 | 7,317 | 1,559 | 2,095 | 2,113 |
| Coors | — | — | — | 281,822 | 310,614 | 312,288 | 63,082 | 70,900 | 67,530 |
| Falstaff | — | — | — | 62,801 | 72,391 | 74,130 | 3,311 | 1,846 | 3,271 |
| General | 149,898 | 158,610 | 147,023 | 78,283 | 81,142 | 74,601 | 4,410 | 3,692 | 2,998 |
| Grace | 684 | 687 | 644 | 473 | 351 | 349 | — | — | — |
| Great Falls | 32 | — | — | — | — | — | 2,238 | 2,004 | 1,718 |
| Hamm | 52,292 | 51,722 | 56,968 | — | — | 17,559 | 23,275 | 20,701 | 21,631 |
| Maier | 10,572 | 10,032 | 9,849 | 7,881 | 7,045 | 9,068 | — | — | — |
| Miller | 22,653 | 26,386 | 24,539 | 12,364 | 13,278 | 13,837 | 4,277 | 4,204 | 4,351 |
| Olympia | 377,323 | 405,543 | 420,893 | 7,183 | 9,170 | 9,950 | — | 3,132 | 2,224 |
| Pabst | 15,305 | 13,570 | 17,278 | 6,833 | 14,261 | 18,216 | 3,406 | 3,113 | 2,704 |
| Schlitz | 7,365 | 13,441 | 13,726 | 45,156 | 71,444 | 72,278 | 12,596 | 11,880 | 14,784 |
| Sicks' | 394,748 | 396,910 | 401,795 | — | — | — | 687 | 527 | 597 |
| All other | 117,699 | 132,080 | 114,214 | — | — | — | 7,186 | 7,621 | 9,872 |
| Total | 1,389,164 | 1,430,180 | 1,437,998 | 671,423 | 754,542 | 792,658 | 146,449 | 153,203 | 155,426 |

[2] Data from State taxing authority.
[3] Data obtained directly from firms listed.

## MARKET SHARES OF MAJOR BREWERS IN 8–STATE,[1] 9–STATE,[2] AND 11–STATE [3] AREAS, 1963 [4]

| COMPANY | 8–STATE BARRELS | % | 9–STATE BARRELS | % | 11–STATE BARRELS | % |
|---|---|---|---|---|---|---|
| Anheuser-Busch | 1,255,266 | 9.6 | 1,308,694 | 9.7 | 1,370,239 | 9.7 |
| Arizona Brewing | 131,102 | 1.0 | 146,681 | 1.1 | 146,913 | 1.0 |
| Blitz-Weinhard Co. | 296,534 | 2.3 | 296,534 | 2.2 | 296,534 | 2.1 |
| Carling Brewing Co. | 338,890 | 2.6 | 338,890 | 2.5 | 347,331 | 2.5 |
| Coors Co., Adolph | 1,782,715 | 13.6 | 1,965,888 | 14.5 | 2,267,305 | 16.1 |
| Falstaff Brewing Corp. | 433,789 | 3.3 | 473,355 | 3.5 | 498,533 | 3.5 |
| General Brewing Corp. | 1,738,082 | 13.3 | 1,749,150 | 12.9 | 1,767,262 | 12.5 |
| Grace Bros. Brewing Co. | 134,357 | 1.0 | 134,357 | 1.0 | 134,357 | 1.0 |
| Great Falls Brewing Co. | 117,859 | .9 | 117,859 | .9 | 119,577 | .9 |
| Hamm Brewing Co., Theo. | 1,211,548 | 9.3 | 1,244,117 | 9.2 | 1,285,843 | 9.1 |
| Maier Brewing Co. | 593,407 | 4.5 | 593,407 | 4.4 | 593,407 | 4.2 |
| Miller Brewing Co. | 309,393 | 2.4 | 320,730 | 2.4 | 341,788 | 2.4 |
| Olympia Brewing Co. | 1,680,103 | 12.8 | 1,680,103 | 12.4 | 1,682,327 | 11.9 |
| Pabst Brewing Co. | 704,405 | 5.4 | 704,405 | 5.2 | 710,238 | 5.0 |
| Schlitz Brewing Co., Jos. | 1,306,642 | 10.0 | 1,357,451 | 10.0 | 1,403,812 | 10.0 |
| Sicks' Rainier Brewing Co. | 592,799 | 4.5 | 592,799 | 4.4 | 593,396 | 4.2 |
| All Other Companies | 463,348 | 3.5 | 494,073 | 3.7 | 549,184 | 3.9 |
| Total | 13,090,239 | 100.0 | 13,518,493 | 100.0 | 14,108,046 | 100.0 |

[1] States of California, Idaho, Montana, Nevada, Oregon, Utah, Washington and Arizona.

[2] Eight States as above, plus New Mexico.

[3] Nine States as above, plus Colorado and Wyoming.

[4] Data for Colorado are for July–December 1963.

Sources: For 8-State area, Stipulation as to Certain Facts and Certain Evidence, filed June 9, 1965.

For Colorado, New Mexico and Wyoming, Defendants' Exhibit DS–185, pages 4, 14 and 26.

# APPENDIX C

## III

### MATTERS OF STIPULATION

Subject to the reservation of objections above stated matters of fact and of evidence are stipulated to as follows:

13. **Sales of Beer in California.** Attached hereto are statistical tables showing sales of beer in California by brewers and by years. These were prepared from statistical reports prepared by the California Brewers Association, compiled from figures supplied by California state agencies and providing statistical information in respect of sales of beer in California. In recent years, this data has been obtained from the California State Board of Equalization, which in turn obtains a monthly tax return regarding sales of beer in California from each brewer located in California and each out-of-state brewer who supplies beer in California.

Before 1960 data of this sort for individual brewers was available only for brewers having breweries in California. Sales of beer produced elsewhere were reported but not by individual brands so that before 1960 only the total is available for beer produced outside of California and sold in California and is shown as "Imports" (whether produced elsewhere in the United States or abroad). Thus figures for such brewers as Anheuser-Busch, Schlitz and Falstaff are not separately shown until they had breweries in California. The figures for sales for each such brewer before it had a brewery in California are included in "Imports" and the failure of the name of such brewer to appear in earlier years does not mean it had no sales in California in such earlier years. Brewers who never have had a brewery in California, as Coors, Olympia and Miller appear separately for the first time in 1960 and their sales in California before 1960 are included in "Imports".

The following changes have occurred in the designation of brewers listed in these reports due to changes in corporate name and/or acquisition by another corporation, and brewery locations are:

**Brewery Locations**

Except as next noticed the brewers referred to in the statistical tables had a brewery in California:

The Adolph Coors brewery is located at Golden, Colorado.

The Olympia brewery is located at Olympia, Washington.

The Miller brewery is located at Milwaukee, Wisconsin.

The Sicks' Rainier brewery is located at Seattle, Washington.

Carling Brewing Co. has several breweries, none located in California.

The Arizona Brewing Co., Inc., brewery is at Phoenix, Arizona and it was recently acquired by Carling Brewing Co.

### Change of Name

The name of San Francisco Brewing Corporation (at one time known as Milwaukee) was changed to Burgermeister Brewing Corporation on February 15, 1957.

The name of General Brewing Corporation was changed to Lucky Lager Brewing Company and then again changed back to General Brewing Corporation.

Aztec Brewing Co. changed its name to Altes Brewing Co.

Regal Amber Brewing Company changed its name to Regal Pale Brewing Company.

Pacific Brewing & Malting Co. (San Jose) on re-organization was known as Wieland's Brewing Co.

### Acquisitions and Other Changes

The Golden West brewery (Oakland) was acquired by Goebel Brewing Co. (Detroit, Michigan) in 1950.

The Los Angeles Brewing Co. was acquired by Pabst Brewing Co. (Milwaukee, Wisconsin) in 1948 and merged with Pabst in 1953.

The Wieland brewery in San Jose (formerly Pacific) was acquired by Falstaff Brewing Corp. (St. Louis, Missouri) on February 15, 1952.

The Rainier brewery (San Francisco) was acquired by Theo. Hamm Brewing Co. (St. Paul, Minnesota) in 1953 and the name and brand was acquired by the Sicks' company of Seattle, Washington which became known as Sicks' Rainier Brewing Co.

Acme Breweries (for a short time known originally as California Brewing Association, not to be confused with a somewhat similar name that appeared for a short time later) had two breweries, one in Los Angeles and one in San Francisco. (a) The Los Angeles brewery was acquired by Rheingold Brewing Co. (Liebmann Breweries, Inc. of Brooklyn, New York) in 1953 and was acquired from Rheingold by Theo Hamm Brewing Co., in 1957. The San Francisco Acme plant was also acquired in 1953 by Rheingold, was disposed of by it in 1954 to local interests who operated it as California Brewing Co. until August 1958 when it ceased operation as a brewery.

The assets, except cash, of Burgermeister Brewing Corp. were acquired by Jos. Schlitz Brewing Company as of December 31, 1961.

The Regal Pale brewery in San Francisco was acquired by Maier Brewing Co. in 1963.

| | 1933 | | | 1934 | | |
|---|---|---|---|---|---|---|
| | Calif Sales Barrels | Rank | Percentage of share of market | Calif Sales Barrels | Rank | Percentage of share of market |
| Acme | 165,481 | 1 | 18.69 | 226,665 | 1 | 12.40 |
| Rainier | 158,943 | 2 | 17.95 | 214,010 | 2 | 11.71 |
| Los Angeles Brew. | 135,166 | 3 | 15.27 | 157,981 | 4 | 8.65 |
| Golden West | 105,825 | 4 | 11.95 | 116,239 | 6 | 6.36 |
| S. F. Brew. | 73,444 | 5 | 8.29 | 91,698 | 7 | 5.02 |
| Aztec | 44,718 | 6 | 5.05 | 176,742 | 3 | 9.67 |
| Maier | 41,586 | 7 | 4.70 | 74,517 | 9 | 4.08 |
| Balboa | 32,328 | 8 | 3.65 | 120,833 | 5 | 6.61 |
| El Dorado | 29,238 | 9 | 3.30 | 26,619 | 19 | 1.46 |
| Fresno | 16,777 | 10 | 1.89 | 31,288 | 16 | 1.71 |
| Grace | 15,420 | 11 | 1.74 | 41,721 | 13 | 2.28 |
| Regal Amber | 14,745 | 12 | 1.67 | 88,749 | 8 | 4.86 |
| El Rey | 13,836 | 13 | 1.56 | 19,894 | 23 | 1.09 |
| Humboldt | 11,963 | 14 | 1.35 | 71,627 | 10 | 3.92 |
| Globe | 9,723 | 15 | 1.10 | 39,067 | 14 | 2.14 |
| Vernon | 8,961 | 16 | 1.01 | 35,716 | 15 | 1.95 |
| Ambassador | 2,922 | 17 | 0.33 | 26,171 | 20 | 1.43 |
| Anchor | 1,641 | 18 | 0.19 | 3,370 | 27 | .18 |
| Pacific | 818 | 19 | .09 | 61,153 | 11 | 3.35 |
| St. Claire | 737 | 20 | .08 | 29,698 | 18 | 1.63 |
| ? | 493 | 21 | .06 | | | |
| Capital | 350 | 22 | .04 | | | |
| Arrowhead | 328 | 23 | .04 | | | |
| General | | | | 47,579 | 12 | 2.60 |
| Buffalo | | | | 32,494 | 17 | 1.78 |
| Eckert | | | | 20,246 | 21 | 1.11 |
| ? | | | | 20,011 | 22 | 1.10 |
| West Coast | | | | 14,426 | 24 | .79 |
| Salinas | | | | 12,811 | 25 | .70 |
| Monterey | | | | 8,465 | 26 | .46 |
| Yosemite | | | | 7,671 | 27 | .42 |
| North Star | | | | 2,565 | 29 | .14 |
| Bailey | | | | 2,489 | 30 | .14 |
| Modesto | | | | 1,934 | 31 | .11 |
| ? | | | | 1,629 | 32 | .09 |
| Lynwood | | | | 744 | 33 | .04 |
| | | | | 107 | 34 | .01 |
| | 885,443 | | | 1,826,929 | | |

No export sales figures for 1933 and 1934

|  | 1935 | | | 1936 | | |
|---|---|---|---|---|---|---|
|  | Calif Sales Barrels | Rank | Percentage of share of market | Calif Sales Barrels | Rank | Percentage of share of market |
| Acme | 242,627 | 1 | 13.15 | 357,557 | 1 | 15.69 |
| Rainier | 219,321 | 2 | 11.89 | 249,840 | 2 | 10.97 |
| Los Angeles Brew. | 150,805 | 3 | 8.17 | 189,786 | 4 | 8.33 |
| General | 134,707 | 4 | 7.30 | 226,150 | 3 | 9.93 |
| Aztec | 131,598 | 5 | 7.13 | 130,798 | 6 | 5.74 |
| Golden West | 103,316 | 6 | 5.60 | 113,502 | 7 | 4.98 |
| S. F. Brewing | 97,895 | 7 | 5.31 | 131,741 | 5 | 5.78 |
| Regal Amber | 87,213 | 8 | 4.73 | 99,537 | 9 | 4.37 |
| Humboldt | 83,788 | 9 | 4.54 | 89,508 | 10 | 3.93 |
| Balboa | 67,691 | 10 | 3.67 | 37,692 | 16 | 1.65 |
| Maier | 63,793 | 11 | 3.46 | 78,298 | 11 | 3.44 |
| Grace | 62,045 | 12 | 3.36 | 105,886 | 8 | 4.65 |
| Buffalo | 50,770 | 13 | 2.75 | 65,754 | 12 | 2.89 |
| Pacific | 47,498 | 14 | 2.57 | 51,876 | 13 | 2.28 |
| Vernon | 35,551 | 15 | 1.93 | 40,874 | 15 | 1.79 |
| El Dorado | 33,489 | 16 | 1.81 | 45,345 | 14 | 1.99 |
| St. Claire | 31,545 | 17 | 1.71 | 35,686 | 18 | 1.57 |
| Ambassador | 31,339 | 18 | 1.70 | 36,855 | 17 | 1.62 |
| Eckert | 22,466 | 19 | 1.22 | 22,747 | 20 | 1.00 |
| Globe | 22,289 | 20 | 1.21 | 17,363 | 24 | .76 |
| Fresno | 21,034 | 21 | 1.14 | 19,386 | 21 | .85 |
| Monterey | 17,573 | 22 | .95 | 13,429 | 25 | .59 |
| El Rey | 13,081 | 23 | .71 | 29,342 | 19 | 1.29 |
| Salinas | 12,094 | 24 | .66 | 17,366 | 23 | .76 |
| Imperial | 11,405 | 25 | .62 | 6,877 | 29 | .30 |
| West Coast | 9,669 | 26 | .52 | 19,356 | 22 | .85 |
| Lynwood | 9,011 | 27 | .49 | 9,401 | 28 | .41 |
| Hollywood | 8,079 | 28 | .44 | 252 | 34 | .01 |
| Modesto | 7,490 | 29 | .41 | 9,830 | 27 | .43 |
| Yosemite | 6,688 | 30 | .36 | 6,133 | 30 | .27 |
| North Star | 3,394 | 31 | .18 | 90 | 35 | .004 |
| Anchor | 2,492 | 32 | .14 | 3,847 | 32 | .17 |
| Bailey | 2,070 | 33 | .11 | — | — | — |
| Rio | 886 | 34 | .05 | 4,284 | 31 | .19 |
| W. L. & Gufsch | 372 | 35 | .02 | 1,437 | 33 | .06 |
| San Diego |  |  |  | 10,553 | 26 | .46 |
|  | 1,845,084 | | | 2,278,378 | | |

|  | 1937 | | | |
| --- | --- | --- | --- | --- |
|  | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
| Acme | 437,875 | 381,500 | 1 | 16.11 |
| Rainier | 319,406 | 286,685 | 2 | 12.10 |
| General | 268,264 | 248,392 | 3 | 10.49 |
| Los Angeles Brew. | 236,569 | 232,508 | 4 | 9.82 |
| Golden West | 133,044 | 129,394 | 5 | 5.46 |
| S. F. Brew. | 129,643 | 120,609 | 6 | 5.09 |
| Aztec | 119,213 | 107,346 | 7 | 4.53 |
| Pacific Malt | 104,244 | 95,529 | 8 | 4.03 |
| Regal Amber | 101,046 | 95,171 | 9 | 4.02 |
| Grace | 99,131 | 93,290 | 10 | 3.94 |
| Maier | 88,807 | 88,262 | 11 | 3.73 |
| Buffalo | 72,749 | 70,616 | 12 | 2.98 |
| Humboldt | 78,383 | 65,490 | 13 | 2.77 |
| Balboa | 49,364 | 46,478 | 14 | 1.96 |
| El Dorado | 45,283 | 45,232 | 15 | 1.91 |
| Vernon | 45,692 | 45,174 | 16 | 1.91 |
| Eckert | 34,279 | 33,657 | 17 | 1.42 |
| St. Claire | 30,878 | 30,515 | 18 | 1.29 |
| Ambassador | 27,408 | 27,355 | 19 | 1.16 |
| El Rey | 27,388 | 25,534 | 20 | 1.08 |
| San Diego | 17,780 | 17,773 | 21 | .75 |
| Fresno | 16,750 | 16,750 | 22 | .71 |
| Globe | 17,001 | 16,583 | 23 | .70 |
| Salinas | 12,467 | 12,454 | 24 | .53 |
| Modesto | 10,269 | 10,220 | 25 | .43 |
| Imperial | 9,423 | 9,423 | 26 | .40 |
| West Coast | 8,057 | 8,052 | 27 | .34 |
| Anchor | 3,021 | 3,014 | 28 | .13 |
| Lynwood | 1,787 | 1,784 | 29 | .06 |
| Gufsch | 1,198 | 1,198 | 30 | .05 |
| Standard | 1,195 | 1,195 | 31 | .05 |
| Monterey (Los Angeles) | 915 | 902 | 32 | .04 |
| Rio | 477 | 477 | 33 | .02 |
|  | 2,549,006 | 2,368,562 | | |

**1938**

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Acme | 440,636 | 377,355 | 1 | 15.58 |
| Rainier | 296,270 | 267,683 | 2 | 11.05 |
| Los Angeles Brew. | 259,926 | 257,043 | 3 | 10.61 |
| Imports | — | 230,781 | 4 | 9.53 |
| General | 256,022 | 225,800 | 5 | 9.32 |
| Golden West | 124,189 | 120,513 | 6 | 4.98 |
| Pacific | 115,176 | 108,176 | 7 | 4.47 |
| Grace | 102,621 | 100,708 | 8 | 4.16 |
| Regal Amber | 99,301 | 94,220 | 9 | 3.89 |
| Aztec | 101,165 | 90,176 | 10 | 3.72 |
| S. F. Brewing | 88,870 | 82,652 | 11 | 3.41 |
| Maier | 76,239 | 75,809 | 12 | 3.13 |
| Monarch (Balboa) | 71,301 | 69,340 | 13 | 2.86 |
| Buffalo | 59,428 | 58,351 | 14 | 2.41 |
| Vernon | 36,142 | 35,530 | 15 | 1.47 |
| El Dorado | 35,109 | 35,109 | 16 | 1.45 |
| Humboldt | 42,297 | 31,747 | 17 | 1.31 |
| Eckert | 30,712 | 30,324 | 18 | 1.25 |
| Ambassador | 23,498 | 23,496 | 19 | .97 |
| St. Claire | 23,890 | 23,455 | 20 | .97 |
| Albion (El Rey) | 19,440 | 18,883 | 21 | .78 |
| San Diego | 18,568 | 18,420 | 22 | .76 |
| Fresno | 13,929 | 13,929 | 23 | .58 |
| Monterey (Salinas) | 12,703 | 12,693 | 24 | .52 |
| Globe | 5,507 | 5,412 | 25 | .22 |
| Red Bluff | 4,716 | 4,716 | 26 | .19 |
| Modesto | 3,889 | 3,889 | 27 | .16 |
| Anchor | 2,487 | 2,487 | 28 | .10 |
| Rollinson (West Coast) | 1,587 | 1,534 | 29 | .06 |
| Kern | 1,155 | 1,155 | 30 | .05 |
| Lynwood | 277 | 277 | 31 | .01 |
| Imperial | 212 | 212 | 32 | .01 |
| Yosemite | 122 | 122 | 33 | .005 |
| | 2,367,384 | 2,421,997 | | |

|  | 1939 California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|
| Acme | 428,177 | 1 | 17.21 |
| Rainier | 302,784 | 2 | 12.17 |
| Los Angeles Brew. | 280,246 | 3 | 11.26 |
| Imports | 235,690 | 4 | 9.47 |
| General | 209,565 | 5 | 8.42 |
| Regal Amber | 129,809 | 6 | 5.22 |
| Golden West | 109,617 | 7 | 4.41 |
| Grace | 103,002 | 8 | 4.14 |
| Pacific | 102,882 | 9 | 4.14 |
| S. F. Brewing | 94,745 | 10 | 3.81 |
| Aztec | 87,512 | 11 | 3.52 |
| Maier | 82,018 | 12 | 3.30 |
| Monarch | 66,510 | 13 | 2.67 |
| Buffalo | 47,125 | 14 | 1.89 |
| Eckert | 32,522 | 15 | 1.31 |
| Vernon | 30,039 | 16 | 1.21 |
| El Dorado | 28,083 | 17 | 1.13 |
| Albion | 18,221 | 18 | .73 |
| Fresno | 16,456 | 19 | .66 |
| Ambassador | 15,820 | 20 | .64 |
| Humboldt | 14,747 | 21 | .59 |
| San Diego | 14,149 | 22 | .57 |
| St. Claire | 12,711 | 23 | .51 |
| Monterey | 10,410 | 24 | .42 |
| Red Bluff | 4,938 | 25 | .20 |
| Kern | 4,815 | 26 | .19 |
| Anchor | 2,631 | 27 | .11 |
| Yosemite | 2,355 | 28 | .09 |
| Globe | 116 | 29 | .005 |
| Rollison | 115 | 30 | .005 |
|  | 2,487,810 | | |

No export sales figures for 1939.

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| | | **1940** | | |
| Acme | 532,226 | 452,952 | 1 | 18.41 |
| Rainier | 363,290 | 309,655 | 2 | 12.59 |
| Los Angeles Brew. | 302,787 | 299,836 | 3 | 12.19 |
| Imports | — | 244,067 | 4 | 9.92 |
| General | 218,295 | 211,200 | 5 | 8.58 |
| Regal Amber | 149,536 | 143,791 | 6 | 5.84 |
| S. F. Brewing | 143,323 | 119,309 | 7 | 4.84 |
| Pacific | 100,845 | 97,602 | 8 | 3.97 |
| Grace | 97,940 | 95,236 | 9 | 3.87 |
| Aztec | 104,765 | 91,900 | 10 | 3.74 |
| Golden West | 89,973 | 84,471 | 11 | 3.43 |
| Maier | 67,679 | 67,230 | 12 | 2.73 |
| Monarch | 65,138 | 64,557 | 13 | 2.62 |
| Buffalo | 35,002 | 34,592 | 14 | 1.41 |
| Eckert | 32,075 | 32,075 | 15 | 1.30 |
| Vernon | 28,282 | 27,303 | 16 | 1.11 |
| El Dorado | 24,714 | 24,714 | 17 | 1.00 |
| Fresno | 17,290 | 17,290 | 18 | .70 |
| Eagle (Albion) | 14,749 | 14,503 | 19 | .59 |
| Monterey | 11,498 | 11,498 | 20 | .47 |
| San Diego | 11,275 | 11,275 | 21 | .46 |
| Anchor | 2,160 | 2,160 | 22 | .09 |
| Ambassador | 1,811 | 1,805 | 23 | .07 |
| Red Bluff | 873 | 873 | 24 | .04 |
| Kern | 300 | 300 | 25 | .01 |
| Yosemite | 231 | 231 | 26 | .009 |
| Humboldt | 65 | 32 | 27 | .00 |
| | 2,416,122 | 2,460,457 | | |

|  | 1941 | | | 1942 | | |
|---|---|---|---|---|---|---|
|  | Calif. Sales Barrels | Rank | Percentage of share of market | Calif. Sales Barrels | Rank | Percentage of share of market |
| Acme | 537,951 | 1 | 20.05 | 719,684 | 1 | 20.89 |
| Rainier | 339,328 | 2 | 12.65 | 400,631 | 5 | 11.63 |
| Los Angeles Brew. | 323,886 | 3 | 12.07 | 414,680 | 3 | 12.04 |
| Imports | 296,497 | 4 | 11.05 | 510,900 | 2 | 14.83 |
| General | 276,956 | 5 | 10.32 | 414,617 | 4 | 12.03 |
| Regal Amber | 170,065 | 6 | 6.34 | 220,532 | 6 | 6.40 |
| S. F. Brew. | 120,346 | 7 | 4.49 | 142,890 | 8 | 4.15 |
| Aztec | 114,311 | 8 | 4.26 | 156,629 | 7 | 4.55 |
| Pacific | 106,047 | 9 | 3.95 | 125,200 | 10 | 3.63 |
| Grace | 81,885 | 10 | 3.05 | 129,122 | 9 | 3.75 |
| Golden West | 73,571 | 11 | 2.74 | 72,105 | 11 | 2.09 |
| Maier | 50,600 | 12 | 1.89 | 32,089 | 13 | .93 |
| Monarch | 44,576 | 13 | 1.66 | 220 | 23 | .007 |
| Buffalo | 29,350 | 14 | 1.09 | 8,085 | 16 | .23 |
| Eckert | 27,498 | 15 | 1.02 | 35,632 | 12 | 1.03 |
| Vernon | 23,820 | 16 | .89 | 16,153 | 15 | .47 |
| El Dorado | 20,104 | 17 | .75 | 26,141 | 14 | .76 |
| Fresno | 14,095 | 18 | .53 | 8,078 | 17 | .23 |
| Monterey | 10,745 | 19 | .40 | 3,052 | 19 | .09 |
| Eagle (Albion) | 10,012 | 20 | .37 | 676 | 22 | .02 |
| San Diego | 9,593 | 21 | .36 | 5,361 | 18 | .16 |
| Anchor | 1,635 | 22 | .06 | 1,418 | 21 | .04 |
| U. S. Brewing |  |  |  | 1,603 | 20 | .05 |
|  | 2,682,871 | | | 3,445,498 | | |

No export sales figures for 1941 and 1942

### 1943

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Acme | 1,008,389 | 861,749 | 1 | 21.10 |
| Imports | — | 552,802 | 2 | 13.54 |
| Los Angeles Brew. | 500,065 | 492,036 | 3 | 12.05 |
| Rainier | 586,654 | 487,990 | 4 | 11.95 |
| General | 548,621 | 470,536 | 5 | 11.52 |
| Regal Amber | 308,510 | 254,992 | 6 | 6.24 |
| S. F. Brewing | 235,040 | 214,042 | 7 | 5.24 |
| Aztec | 200,947 | 167,101 | 8 | 4.09 |
| Grace | 164,563 | 156,917 | 9 | 3.84 |
| Pacific | 153,720 | 137,650 | 10 | 3.37 |
| Golden West | 112,856 | 101,709 | 11 | 2.49 |
| Maier | 57,986 | 57,460 | 12 | 1.41 |
| McKee (Eckert) | 46,305 | 46,305 | 13 | 1.13 |
| Fresno | 37,073 | 35,958 | 14 | .88 |
| El Dorado | 30,795 | 30,795 | 15 | .75 |
| U. S. Brewing | 15,895 | 14,091 | 16 | .35 |
| Anchor | 1,479 | 1,387 | 17 | .03 |
| | 4,008,898 | 4,083,520 | | |

### 1944

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Acme | 1,309,853 | 1,115,722 | 1 | 23.79 |
| Imports | — | 585,524 | 2 | 12.49 |
| Rainier | 637,654 | 535,539 | 3 | 11.42 |
| Los Angeles Brew. | 540,809 | 531,805 | 4 | 11.34 |
| General | 567,684 | 497,166 | 5 | 10.66 |
| Regal Amber | 320,871 | 287,504 | 6 | 6.13 |
| S. F. Brewing | 264,438 | 243,810 | 7 | 5.20 |
| Aztec | 212,564 | 197,324 | 8 | 4.21 |
| Grace | 193,742 | 192,292 | 9 | 4.10 |
| Pacific | 160,039 | 146,290 | 10 | 3.12 |
| Golden West | 112,170 | 104,067 | 11 | 2.22 |
| Maier | 68,366 | 67,536 | 12 | 1.44 |
| Fresno | 57,642 | 57,642 | 13 | 1.23 |
| McKee | 57,614 | 55,961 | 14 | 1.19 |
| U. S. Brewing | 42,291 | 36,159 | 15 | .77 |
| El Dorado | 32,349 | 32,349 | 16 | .69 |
| Anchor | 3,509 | 2,463 | 17 | .05 |
| | 4,581,595 | 4,689,153 | | |

**1945**

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Acme | 1,360,222 | 1,152,582 | 1 | 22.21 |
| Imports | — | 827,307 | 2 | 15.94 |
| Rainier | 652,989 | 568,538 | 3 | 10.96 |
| General | 599,421 | 564,800 | 4 | 10.88 |
| Los Angeles Brew. | 552,846 | 545,604 | 5 | 10.51 |
| Regal Amber | 313,011 | 304,621 | 6 | 5.87 |
| S. F. Brew. | 268,654 | 260,104 | 7 | 5.01 |
| Aztec | 248,333 | 224,414 | 8 | 4.32 |
| Grace | 166,722 | 166,722 | 9 | 3.21 |
| Pacific | 153,112 | 151,789 | 10 | 2.92 |
| Golden West | 147,193 | 147,193 | 11 | 2.84 |
| Maier | 90,822 | 90,419 | 12 | 1.74 |
| McKee | 59,008 | 56,811 | 13 | 1.09 |
| Fresno (Grace) | 52,525 | 52,525 | 14 | 1.01 |
| El Dorado | 32,935 | 32,935 | 15 | .63 |
| U. S. Brewing | 37,223 | 30,390 | 16 | .59 |
| Buffalo | 10,758 | 10,758 | 17 | .21 |
| Anchor | 3,025 | 2,231 | 18 | .04 |
| | 4,748,799 | 5,189,743 | | |

**1946**

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Acme | 1,179,907 | 1,013,760 | 1 | 20.76 |
| Imports | | 911,544 | 2 | 18.67 |
| General | 558,600 | 540,043 | 3 | 11.06 |
| Rainier | 547,774 | 508,337 | 4 | 10.41 |
| Los Angeles Brew. | 495,952 | 493,334 | 5 | 10.10 |
| Regal Amber | 308,278 | 301,292 | 6 | 6.17 |
| S. F. Brew. | 249,704 | 240,634 | 7 | 4.93 |
| Aztec | 228,332 | 214,914 | 8 | 4.40 |
| Pacific | 139,448 | 139,030 | 9 | 2.85 |
| Golden West | 133,319 | 133,319 | 10 | 2.73 |
| Grace | 127,345 | 127,345 | 11 | 2.61 |
| Maier | 86,747 | 86,747 | 12 | 1.78 |
| McKee | 50,736 | 48,992 | 13 | 1.00 |
| Fresno | 43,469 | 43,469 | 14 | .89 |
| U. S. Brewing | 36,073 | 28,956 | 15 | .59 |
| El Dorado | 25,834 | 25,834 | 16 | .53 |
| Buffalo | 22,013 | 22,013 | 17 | .45 |
| Anchor | 4,506 | 3,503 | 18 | .07 |
| | 4,238,037 | 4,883,066 | | |

## 1947

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Imports | — | 1,261,433 | 1 | 23.06 |
| Acme | 1,159,322 | 988,823 | 2 | 18.08 |
| General | 658,255 | 633,952 | 3 | 11.59 |
| Los Angeles Brew. | 602,098 | 598,803 | 4 | 10.95 |
| Rainier | 448,469 | 388,922 | 5 | 7.11 |
| Regal Amber | 369,432 | 357,033 | 6 | 6.53 |
| S. F. Brewing | 363,149 | 352,389 | 7 | 6.44 |
| Aztec | 229,983 | 224,039 | 8 | 4.10 |
| Pacific | 201,387 | 201,087 | 9 | 3.68 |
| Maier | 148,714 | 144,360 | 10 | 2.64 |
| Grace | 127,403 | 118,642 | 11 | 2.17 |
| Golden West | 119,173 | 112,711 | 12 | 2.06 |
| El Dorado | 33,214 | 33,214 | 13 | .61 |
| McKee | 32,728 | 32,728 | 14 | .60 |
| Buffalo | 12,185 | 12,185 | 15 | .22 |
| U. S. Brewing | 4,542 | 4,013 | 16 | .07 |
| Fresno | 3,910 | 3,910 | 17 | .07 |
| Anchor | 2,174 | 2,157 | 18 | .04 |
| | 4,516,138 | 5,470,401 | | |

## 1948

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Imports | — | 1,280,414 | 1 | 24.83 |
| Los Angeles Brew. | 750,558 | 748,929 | 2 | 14.52 |
| Acme | 862,873 | 696,258 | 3 | 13.50 |
| Lucky Lager (General) | 680,720 | 659,310 | 4 | 12.79 |
| Regal Amber | 470,155 | 458,900 | 5 | 8.90 |
| S. F. Brewing | 461,807 | 451,560 | 6 | 8.76 |
| Pacific | 190,533 | 190,381 | 7 | 3.69 |
| Rainier | 224,410 | 173,735 | 8 | 3.37 |
| Altes (Aztec) | 154,354 | 152,009 | 9 | 2.95 |
| Maier | 144,210 | 142,477 | 10 | 2.76 |
| Golden West | 86,432 | 79,886 | 11 | 1.55 |
| Grace | 116,211 | 72,988 | 12 | 1.42 |
| El Dorado | 25,541 | 25,541 | 13 | .50 |
| Eckert (McKee) | 11,190 | 11,190 | 14 | .22 |
| Buffalo | 7,814 | 7,814 | 15 | .15 |
| U. S. Brewing | 2,328 | 2,328 | 16 | .05 |
| Anchor | 1,892 | 1,892 | 17 | .04 |
| Fresno | 749 | 749 | 18 | .01 |
| | 4,191,777 | 5,156,361 | | |

**1949**

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Imports | — | 1,123,387 | 1 | 22.09 |
| Lucky Lager | 840,932 | 817,032 | 2 | 16.07 |
| Los Angeles | 794,955 | 794,131 | 3 | 15.62 |
| Acme | 651,489 | 567,196 | 4 | 11.15 |
| Regal Amber | 572,056 | 562,696 | 5 | 11.07 |
| S. F. Brew. | 496,478 | 488,611 | 6 | 9.61 |
| Pacific | 165,681 | 162,441 | 7 | 3.19 |
| Rainier | 168,372 | 151,504 | 8 | 2.98 |
| Altes | 142,689 | 142,483 | 9 | 2.80 |
| Maier | 114,100 | 111,790 | 10 | 2.20 |
| Grace | 76,871 | 72,309 | 11 | 1.42 |
| Golden West | 61,271 | 57,734 | 12 | 1.14 |
| El Dorado | 25,977 | 25,977 | 13 | .51 |
| Eckert | 4,471 | 4,471 | 14 | .09 |
| Anchor | 2,123 | 2,123 | 15 | .04 |
| Buffalo | 800 | 800 | 16 | .02 |
| | 4,118,265 | 5,084,685 | | |

**1950**

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Lucky Lager | 1,074,442 | 1,035,358 | 1 | 19.75 |
| Imports | — | 1,015,752 | 2 | 19.38 |
| Los Angeles Brew. | 686,358 | 684,690 | 3 | 13.06 |
| S. F. Brew. | 623,426 | 607,302 | 4 | 11.59 |
| Regal Amber | 551,835 | 544,538 | 5 | 10.39 |
| Acme | 561,060 | 496,273 | 6 | 9.47 |
| Maier | 210,416 | 210,015 | 7 | 4.01 |
| Goebel (Golden West) | 187,181 | 184,571 | 8 | 3.52 |
| Pacific | 139,221 | 137,716 | 9 | 2.63 |
| Rainier | 127,784 | 120,296 | 10 | 2.30 |
| Altes | 110,827 | 110,399 | 11 | 2.11 |
| Grace | 65,662 | 64,380 | 12 | 1.23 |
| El Dorado | 27,797 | 27,797 | 13 | .53 |
| Anchor | 2,406 | 2,406 | 14 | .05 |
| | 4,368,415 | 5,241,493 | | |

## 1951

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Imports | — | 1,057,105 | 1 | 19.48 |
| Lucky Lager | 1,095,477 | 1,040,193 | 2 | 19.17 |
| S. F. Brew. | 837,750 | 806,236 | 3 | 14.86 |
| Los Angeles Brew. | 580,351 | 576,793 | 4 | 10.63 |
| Regal Amber | 541,756 | 523,157 | 5 | 9.64 |
| Acme | 493,864 | 441,758 | 6 | 8.14 |
| Maier | 358,196 | 358,196 | 7 | 6.60 |
| Goebel | 218,231 | 213,810 | 8 | 3.94 |
| Pacific | 115,729 | 115,172 | 9 | 2.12 |
| Rainier | 119,933 | 112,945 | 10 | 2.08 |
| Altes | 92,398 | 92,370 | 11 | 1.70 |
| Grace | 63,697 | 62,833 | 12 | 1.16 |
| El Dorado | 24,220 | 24,220 | 13 | |
| Anchor | 1,988 | 1,988 | 14 | .45 |
| | 4,543,590 | 5,426,776 | | |

## 1952

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Lucky Lager | 1,307,755 | 1,221,743 | 1 | 21.59 |
| Imports | — | 1,103,194 | 2 | 19.49 |
| S. F. Brewing | 996,416 | 961,380 | 3 | 16.99 |
| Regal Amber | 572,159 | 556,272 | 4 | 9.83 |
| Los Angeles Brew. | 555,398 | 553,497 | 5 | 9.78 |
| Acme | 426,048 | 388,904 | 6 | 6.87 |
| Maier | 369,671 | 369,671 | 7 | 6.53 |
| Goebel | 221,830 | 208,083 | 8 | 3.68 |
| Rainier | 89,981 | 83,923 | 9 | 1.48 |
| Wielands (Pacific) | 84,552 | 82,420 | 10 | 1.46 |
| Grace | 56,711 | 56,711 | 11 | 1.00 |
| Altes | 50,221 | 50,221 | 12 | .89 |
| El Dorado | 22,076 | 22,076 | 13 | .39 |
| Anchor | 1,595 | 1,595 | 14 | .03 |
| | 4,754,413 | 5,659,690 | | |

## 1953

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Lucky Lager | 1,532,412 | 1,378,149 | 1 | 23.46 |
| Imports | — | 1,106,553 | 2 | 18.84 |
| S. F. Brewing | 1,017,997 | 946,817 | 3 | 16.12 |
| Regal Amber | 601,803 | 585,646 | 4 | 9.97 |
| Pabst (Los Angeles Brew.) | 597,932 | 571,843 | 5 | 9.74 |
| Acme | 398,028 | 363,094 | 6 | 6.18 |
| Maier | 321,617 | 319,884 | 7 | 5.45 |
| Falstaff (Wielands) | 327,672 | 316,790 | 8 | 5.39 |
| Goebel | 271,710 | 172,545 | 9 | 2.94 |
| Rainier | 48,290 | 44,035 | 10 | .75 |
| Grace | 43,032 | 42,951 | 11 | .73 |
| El Dorado | 17,162 | 17,162 | 12 | .29 |
| Altes | 6,572 | 6,572 | 13 | .11 |
| Anchor | 1,591 | 1,591 | 14 | .03 |
| | 5,185,818 | 5,873,632 | | |

## 1954

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Lucky Lager | 1,570,493 | 1,396,827 | 1 | 23.91 |
| S. F. Brewing | 1,041,100 | 953,029 | 2 | 16.32 |
| Imports | — | 709,960 | 3 | 12.15 |
| Pabst | 752,745 | 601,527 | 4 | 10.30 |
| Regal Pale (Regal Amber) | 607,607 | 595,852 | 5 | 10.20 |
| Falstaff | 347,073 | 323,793 | 6 | 5.54 |
| Rheingold (Acme L.A.) | 274,813 | 269,501 | 7 | 4.61 |
| Maier | 233,650 | 228,683 | 8 | 3.91 |
| Hamm's (Rainier) | 225,027 | 217,939 | 9 | 3.73 |
| Schlitz | 290,638 | 140,359 | 10 | 2.40 |
| Anheuser-Busch | 269,273 | 126,129 | 11 | 2.16 |
| California Brew. (Acme S.F.) | 136,058 | 121,002 | 12 | 2.07 |
| Goebel | 144,873 | 107,940 | 13 | 1.85 |
| Grace | 33,172 | 33,164 | 14 | .57 |
| El Dorado | 14,061 | 14,061 | 15 | .24 |
| Anchor | 1,584 | 1,584 | 16 | .03 |
| | 5,942,167 | 5,841,350 | | |

### 1955

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Lucky Lager | 1,606,813 | 1,388,347 | 1 | 22.89 |
| S. F. Brewing | 1,071,003 | 977,561 | 2 | 16.12 |
| Imports | — | 681,765 | 3 | 11.24 |
| Hamm's | 711,612 | 606,309 | 4 | 10.00 |
| Regal Pale | 619,009 | 597,095 | 5 | 9.84 |
| Pabst | 613,036 | 541,693 | 6 | 8.93 |
| Falstaff | 337,864 | 283,047 | 7 | 4.67 |
| Anheuser-Busch | 451,910 | 256,234 | 8 | 4.22 |
| Schlitz | 508,107 | 243,190 | 9 | 4.01 |
| Maier | 224,744 | 216,957 | 10 | 3.58 |
| Rheingold | 138,222 | 135,635 | 11 | 2.24 |
| Goebel | 108,692 | 80,912 | 12 | 1.33 |
| Grace | 32,510 | 31,552 | 13 | .52 |
| California Brewing | 24,320 | 18,479 | 14 | .30 |
| El Dorado | 4,054 | 4,054 | 15 | .07 |
| Anchor | 2,214 | 2,214 | 16 | .04 |
| | 6,454,110 | 6,065,044 | | |

### 1956

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Lucky Lager | 1,719,714 | 1,436,720 | 1 | 22.79 |
| Burgermeister (S. F. Brew.) | 1,032,203 | 943,762 | 2 | 14.97 |
| Imports | — | 838,419 | 3 | 13.30 |
| Hamm's | 824,322 | 757,130 | 4 | 12.01 |
| Pabst | 664,834 | 607,879 | 5 | 9.64 |
| Regal Pale | 572,749 | 553,325 | 6 | 8.78 |
| Anheuser-Busch | 537,408 | 323,716 | 7 | 5.13 |
| Falstaff | 322,131 | 268,235 | 8 | 4.25 |
| Schlitz | 501,284 | 264,860 | 9 | 4.20 |
| Maier | 153,661 | 137,884 | 10 | 2.19 |
| Rheingold | 96,263 | 92,270 | 11 | 1.46 |
| Southern (Grace) | 51,861 | 50,860 | 12 | .81 |
| California Brewing | 21,797 | 17,393 | 13 | .28 |
| Goebel | 10,890 | 10,013 | 14 | .16 |
| Anchor | 2,235 | 2,235 | 15 | .04 |
| | 6,511,352 | 6,304,701 | | |

|  | California Sales and Exports | 1957 California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Lucky | 1,716,897 | 1,414,789 | 1 | 21.57 |
| Imports | — | 1,014,282 | 2 | 15.46 |
| Burgermeister | 971,291 | 887,798 | 3 | 13.53 |
| Hamm's | 892,319 | 845,910 | 4 | 12.90 |
| Pabst | 573,795 | 538,511 | 5 | 8.21 |
| Regal Pale | 464,449 | 452,062 | 6 | 6.89 |
| Falstaff | 497,158 | 441,849 | 7 | 6.74 |
| Anheuser-Busch | 576,271 | 369,020 | 8 | 5.63 |
| Schlitz | 517,237 | 283,692 | 9 | 4.32 |
| Maier | 220,016 | 195,109 | 10 | 2.97 |
| Southern | 71,825 | 67,922 | 11 | 1.04 |
| Rheingold | 31,938 | 30,754 | 12 | .47 |
| California | 20,270 | 15,114 | 13 | .23 |
| Anchor | 2,825 | 2,825 | 14 | .04 |
|  | 6,556,291 | 6,559,637 |  |  |

|  | California Sales and Exports | 1958 California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Lucky Lager | 1,877,022 | 1,553,338 | 1 | 22.39 |
| Imports | — | 1,284,421 | 2 | 18.51 |
| Burgermeister | 967,113 | 886,359 | 3 | 12.78 |
| Hamm's | 851,472 | 766,512 | 4 | 11.05 |
| Pabst | 609,969 | 580,278 | 5 | 8.36 |
| Falstaff | 490,706 | 431,553 | 6 | 6.22 |
| Regal Pale | 432,405 | 425,744 | 7 | 6.14 |
| Anheuser-Busch | 584,244 | 383,894 | 8 | 5.53 |
| Maier | 329,089 | 297,642 | 9 | 4.29 |
| Schlitz | 477,927 | 273,331 | 10 | 3.94 |
| Grace Bros. | 22,729 | 20,635 | 11 | .30 |
| Southern | 19,067 | 18,491 | 12 | .27 |
| California Brewing | 17,578 | 13,205 | 13 | .19 |
| Anchor | 2,412 | 2,412 | 14 | .03 |
|  | 6,681,733 | 6,937,815 |  |  |

### 1959

|  | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Imports | — | 1,485,482 | 1 | 19.98 |
| Lucky Lager | 1,812,524 | 1,466,894 | 2 | 19.73 |
| Hamm's | 1,080,104 | 951,603 | 3 | 12.80 |
| Burgermeister | 973,837 | 887,106 | 4 | 11.93 |
| Pabst | 592,783 | 555,918 | 5 | 7.48 |
| Anheuser-Busch | 790,579 | 474,893 | 6 | 6.39 |
| Falstaff | 539,359 | 463,912 | 7 | 6.24 |
| Maier | 426,060 | 396,541 | 8 | 5.33 |
| Regal Pale | 342,572 | 338,244 | 9 | 4.55 |
| Schlitz | 506,739 | 292,559 | 10 | 3.94 |
| Grace | 77,367 | 74,083 | 11 | 1.00 |
| Pacific | 47,199 | 45,025 | 12 | .61 |
| Anchor | 1,251 | 1,251 | 13 | .02 |
|  | 7,190,374 | 7,433,511 |  |  |

### 1960

|  | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Lucky Lager | 1,719,159 | 1,320,480 | 1 | 17.6 |
| Hamm's | 1,117,314 | 977,865 | 2 | 13.0 |
| Burgermeister | 891,324 | 805,289 | 3 | 10.7 |
| Olympia | — | 745,663 | 4 | 9.9 |
| Pabst | 586,306 | 545,373 | 5 | 7.3 |
| Anheuser-Busch | 775,772 | 511,507 | 6 | 6.8 |
| Maier | 523,215 | 491,426 | 7 | 6.5 |
| Coors | — | 476,656 | 8 | 6.3 |
| Falstaff | 509,825 | 416,703 | 9 | 5.5 |
| Regal Pale | 312,524 | 309,541 | 10 | 4.1 |
| Schlitz | 489,836 | 293,238 | 11 | 3.9 |
| Miller | — | 205,200 | 12 | 2.7 |
| Other U.S. Imports | — | 144,723 | 13 | 1.9 |
| Grace | 122,044 | 118,665 | 14 | 1.6 |
| Sicks' Rainier | — | 61,853 | 15 | 0.8 |
| Outside U.S. Imports | — | 42,217 | 16 | 0.6 |
| Fisher | — | 22,417 | 17 | 0.3 |
| Carling | — | 15,525 | 18 | 0.2 |
| Arizona | — | 12,751 | 19 | 0.2 |
| Pacific | 6,325 | 6,235 | 20 | 0.1 |
| Steam Beer (Anchor) | 383 | 383 | 21 | 0.0 |
|  | 7,054,027 | 7,523,710 |  |  |

### 1961

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Lucky Lager | 1,758,884 | 1,336,731 | 1 | 17.3 |
| Hamm's | 1,092,755 | 943,827 | 2 | 12.5 |
| Olympia | — | 771,658 | 3 | 10.0 |
| Coors | — | 717,511 | 4 | 9.3 |
| Burgermeister | 726,533 | 653,898 | 5 | 8.5 |
| Pabst | 695,855 | 642,218 | 6 | 8.3 |
| Anheuser-Busch | 896,899 | 526,241 | 7 | 6.8 |
| Maier | 484,767 | 457,525 | 8 | 5.9 |
| Falstaff | 492,865 | 385,893 | 9 | 5.0 |
| Schlitz | 460,141 | 283,278 | 10 | 3.6 |
| Miller | — | 231,067 | 11 | 3.0 |
| Regal Pale | 222,844 | 219,834 | 12 | 2.8 |
| Other U.S. Imports | — | 156,266 | 13 | 2.0 |
| Grace | 154,890 | 150,808 | 14 | 1.9 |
| Fisher | — | 80,242 | 15 | 1.0 |
| Sicks' Rainier | — | 62,677 | 16 | 0.8 |
| Outside U.S. Imports | — | 47,120 | 17 | 0.6 |
| Arizona | — | 28,667 | 18 | 0.4 |
| Carling | — | 19,471 | 19 | 0.3 |
| Steam Beer (Anchor) | 1,633 | 1,633 | 20 | 0.0 |
| | 6,988,066 | 7,716,565 | | |

### 1962

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Lucky Lager [1] | 1,589,716 | 1,333,185 | 1 | 16.4 |
| Hamm's | 1,175,914 | 1,012,495 | 2 | 12.4 |
| Schlitz [2] | 1,219,995 | 996,983 | 3 | 12.3 |
| Coors | — | 982,924 | 4 | 12.1 |
| Olympia | — | 847,570 | 5 | 10.4 |
| Pabst | 719,312 | 648,863 | 6 | 8.0 |
| Anheuser-Busch | 1,074,319 | 577,282 | 7 | 7.1 |
| Maier | 489,197 | 463,825 | 8 | 5.7 |
| Falstaff | 512,655 | 389,650 | 9 | 4.8 |
| Miller | — | 234,855 | 10 | 2.9 |
| Regal Pale | 196,265 | 190,590 | 11 | 2.3 |
| Other U.S. Imports | — | 150,104 | 12 | 1.8 |
| Grace | 142,461 | 137,433 | 13 | 1.7 |
| Sicks' Rainier | — | 67,350 | 14 | 0.8 |
| Outside U.S. Imports | — | 48,536 | 15 | 0.6 |
| Arizona | — | 29,042 | 16 | 0.4 |
| Carling | — | 21,691 | 17 | 0.3 |
| Steam Beer | 1,726 | 1,726 | 18 | 0.0 |
| | 7,121,560 | 8,134,104 | | |

[1] Lucky Lager figures include Fisher.
[2] Schlitz figures include Burgermeister.

### 1963

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Coors | — | 1,193,795 | 1 | 13.8 |
| General (Lucky) | 1,487,881 | 1,169,151 | 2 | 13.7 |
| Schlitz | 1,419,250 | 1,120,482 | 3 | 13.1 |
| Anheuser-Busch | 1,333,367 | 1,033,218 | 4 | 12.0 |
| Hamm's | 1,201,119 | 992,580 | 5 | 11.5 |
| Olympia | — | 837,440 | 6 | 9.7 |
| Pabst | 775,214 | 661,670 | 7 | 7.7 |
| Maier | 596,656 | 566,983 | 8 | 6.6 |
| Falstaff | 474,594 | 350,835 | 9 | 4.1 |
| Miller | — | 227,821 | 10 | 2.6 |
| U. S. Imports | — | 155,171 | 11 | 1.8 |
| Grace | 135,462 | 131,146 | 12 | 1.5 |
| Sicks' Rainier | — | 67,301 | 13 | 0.7 |
| Outside U.S. Imports | — | 57,358 | 14 | 0.7 |
| Arizona | — | 29,185 | 15 | 0.3 |
| Carling | — | 24,840 | 16 | 0.2 |
| Steam Beer | 1,326 | 1,326 | 17 | 0.0 |
| Regal Pale | 56 | 56 | 18 | 0.0 |
| | 7,424,925 | 8,620,358 | | |

### 1964

| | California Sales and Exports | California Sales Barrels | Rank | Percentage of share of market |
|---|---|---|---|---|
| Coors | — | 1,496,008 | 1 | 16.3 |
| Olympia | — | 1,109,549 | 2 | 12.1 |
| Schlitz | 1,286,931 | 1,036,762 | 3 | 11.3 |
| General Brewing | 1,219,071 | 1,033,087 | 4 | 11.3 |
| Anheuser-Busch | 1,303,716 | 1,002,334 | 5 | 11.0 |
| Hamm's | 1,069,117 | 891,524 | 6 | 9.7 |
| Maier | 682,699 | 654,913 | 7 | 7.2 |
| Pabst | 659,640 | 551,598 | 8 | 6.0 |
| Miller | — | 382,891 | 9 | 4.2 |
| Falstaff | 405,755 | 319,161 | 10 | 3.5 |
| Other U.S. Imports | — | 263,209 | 11 | 2.9 |
| Grace | 152,726 | 147,451 | 12 | 1.6 |
| Sicks' Rainier | — | 90,969 | 13 | 1.0 |
| Outside U.S. Imports | — | 76,109 | 14 | 0.8 |
| Carling | — | 49,967 | 15 | 0.6 |
| Arizona | — | 45,907 | 16 | 0.5 |
| Steam Beer | 1,469 | 1,469 | 17 | 0.0 |
| | 6,781,124 | 9,152,908 | | |

# APPENDIX D

15. **Sales of Beer in Hawaii by Brewers, 1961–1963.** Below is a statistical statement of sales of beer (in number of barrels) by brewers, 1961–1963, in Hawaii, which is hereby authenticated, and it is stipulated that it is evidence of the matters therein recited:

### SALES (IN BARRELS) OF BEER IN HAWAII — 1961–1963

| BREWER | 1961 | 1962 | 1963 |
|---|---|---|---|
| American Brewing Co.[1] | 3,419 | 163 | — |
| Anheuser-Busch, Inc.[3] | 17,189 | 18,100 | 19,587 |
| Blitz-Weinhard Co.[4] | — | — | 56 |
| Carling Brewing Co., Inc.[4] | 7,854 | 11,380 | 16,890 |
| Falstaff Brewing Corp.[3] | 27,837 | 31,336 | 31,964 |
| General Brewing Co.[3] | 108,381 | 98,414 | 119,719 |
| Grace Bros. Brewing Co.[3] | 1,072 | 780 | 755 |
| Hamm's Brewing Co.[3] | 2,502 | 7,862 | 8,705 |
| Hawaii Brewing Corp.[2] | 41,752 | 33,178 | 31,439 |
| Maier Brewing Co.[3] | 1,368 | 1,259 | 2,015 |
| Miller Brewing Co.[4] | 17,864 | 22,705 | 17,609 |
| Olympia Brewing Co.[4] | 6,042 | 8,693 | 12,524 |
| Pabst Brewing Co.[3] | 2,076 | 1,003 | 979 |
| Schlitz-Burgermeister [3] | 25,405 | 23,087 | 28,074 |
| Sicks' Rainier Brewing Co.[4] | 103 | — | — |
| TOTAL | 262,864 | 257,960 | 290,316 |

[1] Taxpaid withdrawal figures.  Final report to IRS made in 1962.
[2] Source: Department of Taxation, State of Hawaii.
[3] Source: California Brewers Association figures.
[4] Data supplied by brewer.

# APPENDIX E

## BEER SALES YEARS ENDED DECEMBER 31
### 1957 — 1958 — 1959 — 1960

|  | 1957 | 1958 | 1959 | 1960 |
|---|---|---|---|---|
| California | $34,438,680 | $34,407,474 | $35,156,063 | $32,570,478 |
| Arizona | 726,769 | 767,163 | 841,604 | 907,784 |
| Idaho | 165,984 | 151,128 | 144,606 | 94,266 |
| Montana | 170,920 | 113,795 | 82,645 | 43,960 |
| Nevada | 651,212 | 578,172 | 546,580 | 467,373 |
| Oregon | 427,941 | 454,620 | 380,627 | 376,831 |
| Washington | 284,253 | 295,209 | 199,554 | 212,166 |
| New Mexico | — | 73,168 | 230,561 | 121,186 |
| Hawaii | 77,841 | 58,345 | 92,620 | 88,257 |
| Alaska | 49,625 | 37,721 | 49,196 | 38,597 |
| Export | 326,675 | 285,056 | 473,608 | 633,102 |
|  | $37,319,900 | $37,221,851 | $38,197,664 | $35,554,000 |

# APPENDIX F

## RELEVANT PORTIONS OF CLAYTON ACT, SECTION 7 (15 U.S.C. § 18).

### Acquisition by one corporation of stock of another

No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

This section shall not apply to corporations purchasing such stock solely for investment and not using the same by voting or otherwise to bring about, or in attempting to bring about, the substantial lessening of competition.   \*   \*   \*

# APPENDIX G

## FINAL JUDGMENT AND DECREE

Plaintiff, United States of America, having filed its complaint herein on February 19, 1964, defendant Jos. Schlitz Brewing Company having appeared and filed its answer to the complaint denying the substantive allegations thereof, and defendant General Brewing Corporation, sued herein as General Brewing Company, having appeared and filed its answer thereto admitting the substantive allegations thereof, the testimony having been taken at the trial hereof, and the Court having fully considered the matter, it is hereby

Ordered, adjudged and decreed as follows:

### I

(A) This Court has jurisdiction of the subject matter of this action and the parties hereto pursuant to Section 15 of the Act of Congress of October 15, 1914, as amended (15 U.S.C. § 25).

(B) The acquisition by defendant Jos. Schlitz Brewing Company of the business and assets of Burgermeister Brewing Corporation, as charged in the complaint herein, constitutes a violation of Section 7 of the Clayton Act (15 U.S.C. § 18).

(C) The acquisition by said defendant of common capital stock in John Labatt Limited, as charged in the complaint herein, constitutes a violation of Section 7 of the Clayton Act (15 U.S.C. § 18).

### II

As used in this Final Judgment and Decree:

(A) "Person" means any individual, partnership, firm, corporation, association, trustee or other business or legal entity.

(B) "Schlitz" means defendant Jos. Schlitz Brewing Company, its successors and assigns.

(C) "General Brewing" means defendant General Brewing Company, its successors and assigns.

(D) "Burgermeister" means Burgermeister Brewing Corporation prior to December 31, 1961, a corporation organized and existing under the laws of the State of California.

(E) "Labatt" means John Labatt Limited, a Dominion Corporation, organized and existing under the laws of the Dominion of Canada, with its principal office in London, Ontario, Canada.

### III

This Final Judgment and Decree is binding upon Schlitz and General Brewing, their respective subsidiaries, affiliates, directors, officers, agents and employees as well as upon all other persons who shall have received actual notice of this Final Judgment and Decree by personal service or otherwise.

## IV

(A) Schlitz is permanently enjoined and restrained from acquiring, holding, or exercising any control over, directly or indirectly, any shares of stock of any corporation engaged in the brewing of beer in the State of California or any interest, directly or indirectly, in any brewery facility, plant or other assets of any person engaged in the brewing of beer in the State of California.

(B) For a period of ten (10) years from the date of entry of this Final Judgment and Decree, Schlitz is enjoined and restrained from acquiring, holding or exercising any control over, directly or indirectly, any shares of stock of any corporation engaged in the brewing of beer outside of the State of California or any interest in any brewery facility, plant or other asset of any person engaged in the brewing of beer outside of the State of California except (1) with the prior written consent of the plaintiff herein or (2) if such consent is refused or withheld, after approval by this Court upon an affirmative showing by Schlitz that the effect of the acquisition, holding or control will not be substantially to lessen competition or to tend to create a monopoly in any line of commerce in any section of the country.

(C) For a period of five (5) years after the date of entry of this Final Judgment and Decree, General Brewing is enjoined and restrained from transferring any shares of stock in General Brewing owned by Labatt, Capital Estates, Inc., or Lucky Lager Breweries, Ltd., and from selling any brewing facility or plant owned by General Brewing at the time of entry of this Final Judgment and Decree except after delivery of written notice of any such proposed transfer or sale to the Assistant Attorney General in charge of the Antitrust Division at least sixty (60) days in advance of the intended effective date of each such transfer or sale.

## V

(A) Schlitz shall, upon and subject to the terms of this Final Judgment and Decree, divest itself of all of the business and assets of Burgermeister acquired by Schlitz on or about December 31, 1961 and all additional assets or improvements which have since been added thereto by Schlitz (hereinafter all said business, assets, additions and improvements are collectively referred to as "the Burgermeister assets").

(B) (1) Schlitz is ordered and directed to make bona fide, persistent and sustained efforts to divest itself of the Burgermeister assets by sale, to publicize the availability thereof for sale in appropriate trade and financial publications and to promote the expeditious sale thereof. Sale shall be at a price and upon terms approved by this Court which will consider, among other things, the reasonable market value of the Burgermeister assets, the importance of effectuating a prompt sale and the desirability of sale as a going business to a purchaser who will use the Burgermeister assets as a viable competitor in the sale and production of beer.

(2) Schlitz shall render monthly written reports to this Court, with copies to the Assistant Attorney General in charge of the Antitrust Division, detailing its efforts to divest itself of the Burgermeister assets and the results of such efforts. Plaintiff or Schlitz may apply to this Court for approval or disapproval of any proposal for sale by Schlitz of the Burgermeister assets. All parties shall have the right to be heard thereon.

(C) (1) Schlitz shall take such steps as are necessary to maintain the Burgermeister assets until the time of sale thereof at the standard of operating performance applicable thereto during the year preceding entry of this Final Judgment and Decree. Pending such sale, Schlitz shall not permit the Burgermeister brewery to be diminished in capacity nor turned to uses other than the production of beer. Schlitz shall furnish, to all bona fide prospective purchasers of the Burgermeister assets, information regarding said brewery and permit them to have such access to, and to make such inspection of, the Burgermeister assets and records as are reasonably appropriate.

(2) Schlitz is ordered and directed to continue to use and operate the Burgermeister assets until the time of sale thereof in substantially the same manner in which they have been used and operated during the year preceding entry of this Final Judgment and Decree and to continue the production, advertising and sale of Burgermeister beer in substantially the same manner that such production, advertising and sale has been carried on during that year. Schlitz is ordered and directed to continue to offer to sell Burgermeister beer to the distributors who at the time of entry of this Final Judgment and Decree distribute Burgermeister beer, and to use its best efforts to retain for the purchaser of the Burgermeister assets those distributors presently selling Burgermeister beer.

(3) Schlitz shall not increase its sales, if any, of Old Milwaukee beer to distributors who sell Burgermeister beer nor its advertising or promotion of Old Milwaukee beer, if any, for sale in States where Burgermeister beer is sold until six months after Schlitz has sold the Burgermeister assets as hereinabove required.

## VI

Schlitz is ordered to divest itself, completely and unconditionally, of all of those shares of capital stock it holds in Labatt to a person or persons satisfactory to the Court. Within ninety (90) days after the date of entry of this Final Judgment and Decree, Schlitz is ordered to submit to the Court (with copies to plaintiff and General Brewing) a plan for the sale of said stock, setting forth to the extent then known all of the terms and conditions of sale and the identity of the proposed purchaser or purchasers. Pending the complete divestiture of said stock, Schlitz is enjoined and restrained from exercising any dominion or control over said stock, directly or indirectly.

## VII

(A) For the purpose of securing compliance with this Final Judgment and Decree and subject to any legally recognized privi-

lege, duly authorized representatives of the Department of Justice shall, upon written request of the Attorney General or of the Assistant Attorney General in charge of the Antitrust Division and on reasonable notice to defendants at their respective principal offices, be permitted (1) reasonable access during the office hours of defendants to all books, ledgers, accounts, correspondence, memoranda and other records and documents in the possession or under the control of defendants relating to any of the matters contained in this Final Judgment and Decree; (2) subject to the reasonable convenience of defendants, and without restraint or interference, to interview officers, directors, agents and employees of defendants regarding such matters. All those so interviewed may have their own counsel present during all such interviews and shall, prior to interview, be advised of this provision therefor.

(B) Upon written request of the Attorney General or the Assistant Attorney General in charge of the Antitrust Division, said defendants shall submit such reports in writing with respect to the matters contained in this Final Judgment and Decree as may from time to time be necessary for its enforcement.

(C) No information obtained by the means permitted in this Section VII shall be divulged by any representative of the Department of Justice to any person other than a duly authorized representative of the Executive Branch of the plaintiff, except in the course of proceedings in which the United States is a party for the purpose of securing compliance with this Final Judgment and Decree or as otherwise required by law.

## VIII

This Court expressly retains full jurisdiction for the purpose of enabling any of the parties to this Final Judgment and Decree to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Final Judgment and Decree or for the modification or termination of any of the provisions thereof or for modifications which, consistently with the purposes thereof, may better comport with sound business practices or for making different or additional provisions for the divestiture by Schlitz of the Burgermeister assets and the Labatt stock if such divestitures have not been completed with all reasonable dispatch or for modification or termination of any of the provisions thereof by this Court on its own motion, and for the enforcement of compliance therewith and punishment of violations thereof. The retention of jurisdiction herein provided for shall not be exercised to relieve Schlitz of its duty, under this Final Judgment and Decree, to divest itself of the Burgermeister assets and of its stock in Labatt. No person shall subvert any provision of this Final Judgment and Decree by indirection or otherwise.

## IX

Plaintiff's costs shall be taxed against defendant Schlitz.